**Rayburn F. HESSE, Petitioner,**

v.

**DEPARTMENT OF STATE,
Respondent.**

**No. 99–3387.**

United States Court of Appeals,
Federal Circuit.

July 6, 2000.

F. Douglas Harnett, of Washington, DC, argued for petitioner.

Todd M. Hughes, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. With him on the brief were David W. Ogden, Acting Assistant Attorney General; David M. Cohen, Director; and Mark A. Melnick, Assistant

Director. Of counsel was Thomas H. Alphin, Jr., Attorney, Office of the Legal Advisor, Department of State, of Washington, DC.

Before MICHEL, SCHALL, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

The Department of State suspended Rayburn F. Hesse's Top Secret security clearance and then indefinitely suspended him from his position with the agency. He appealed the suspension from his position to the Merit Systems Protection Board. The Board first held that it lacked jurisdiction to consider the propriety of the agency's decision to suspend Mr. Hesse's security clearance. Because the agency suspended Mr. Hesse from his position based entirely on the suspension of his security clearance and because the Board found that the agency's action suspending Mr. Hesse from his position was not procedurally flawed, the Board upheld the indefinite suspension. We agree with the Board's conclusions as to the scope of its jurisdiction and as to the procedural challenges to the agency action, and we therefore affirm the Board's decision.

I

Mr. Hesse served as a GS–15 Foreign Affairs Officer with the Department of State. His position required him to have and maintain a Top Secret security clearance. In 1997, following a series of alleged security violations by Mr. Hesse, the agency proposed to suspend Mr. Hesse's security clearance.

Mr. Hesse was given an opportunity to respond to the agency's charges, and he did so in writing. After receiving Mr. Hesse's response, the deciding official suspended Mr. Hesse's security clearance for two years. The notice advising Mr. Hesse of the suspension informed him that he could appeal the decision to an appeals panel within the Department of State and present his case orally to the panel.

Mr. Hesse requested review by the appeals panel and submitted a letter setting forth the grounds for his appeal. When the appeals panel convened, it heard oral presentations from both Mr. Hesse and his counsel. The panel subsequently issued a written decision sustaining the two-year suspension. Based on the suspension of Mr. Hesse's security clearance, the agency suspended him from his position for failure to maintain the security clearance required for the performance of his job.

Mr. Hesse appealed to the Merit Systems Protection Board seeking review of the decisions to suspend his security clearance and to suspend him from his position. In his submissions to the Board, he argued that the agency had violated his procedural rights and had acted in reprisal for acts of whistleblowing on his part.

The administrative judge assigned to Mr. Hesse's case held that the Board did not have jurisdiction to review his contention that his security clearance was suspended for whistleblowing. As to Mr. Hesse's procedural claims regarding the suspension of his security clearance and his objection to his indefinite suspension from his position, the administrative judge rejected Mr. Hesse's claims as being without merit. Mr. Hesse then petitioned the full Board for review of the administrative judge's initial decision. The Board denied the petition but reopened the case on its own motion, vacated the initial decision, and affirmed the agency's actions.

The Board considered Mr. Hesse's case together with *Roach v. Department of the Army,* 82 M.S.P.R. 464 (1999), in which the Board held that it lacks jurisdiction to review the denial, revocation, or suspension of a security clearance, whether raised in an individual right of action (IRA) filed with the Board after seeking corrective action from the Office of Special Counsel, *see* 5 U.S.C. § 1221(a), (b), or as an affirmative defense in an appeal directly to the Board from an adverse agency action, *see* 5 U.S.C. § 7513. The Board based its conclusion on the Supreme Court's decision in *Department of the Navy v. Egan,* 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918

(1988). In that case, the Court held that the Board did not have authority to review security clearance determinations in appeals from agency actions under 5 U.S.C. § 7513(d). Noting that security clearance decisions are not well-suited for review by generalist boards and courts and that Executive Branch agencies enjoy broad discretion in making such decisions, the Court in *Egan* held that, in order to confer jurisdiction on the Board to review security clearance determinations, Congress would have had to state explicitly that it intended for the Board to review such decisions.

The Board concluded that the 1994 amendments to the Civil Service Reform Act, which made the whistleblower protection provisions of the Act applicable to "any other significant changes in duties, responsibilities, or working conditions," did not constitute the kind of unmistakable expression of congressional intent to allow review of security clearance determinations that the Court required in *Egan.* The Board therefore held that it lacked jurisdiction to address Mr. Hesse's claim that the State Department suspended his security clearance in retaliation for whistleblowing on his part. In addition, the Board rejected Mr. Hesse's claims that he was entitled to reassignment to a nonsensitive position and that he was denied procedural rights to which he was entitled under 5 U.S.C. § 7513(b) and the Due Process Clause of the Fifth Amendment.

II

■ In his petition to this court, Mr. Hesse first argues that the action the State Department took against him was in reprisal for whistleblowing. Mr. Hesse asserts that he is not challenging the Executive Branch's prerogative to determine who is qualified for a security clearance, but instead is arguing that suspension of a security clearance cannot be used to punish whistleblowing employees. The Board and this court have jurisdiction over such actions, Mr. Hesse urges, because 5 U.S.C. § 1221(a) authorizes appeals of allegations of whistleblowing and does not exclude

appeals involving the suspension of a security clearance.

The only other court to consider the question whether an adverse decision on an issue of security clearance is subject to the whistleblower protection provisions of the Civil Service Reform Act has ruled that it is not. *See Weber v. United States,* 209 F.3d 756, 759 (D.C.Cir.2000). Although that case arose in a different procedural posture, as a mandamus action directed at the Office of Special Counsel, we agree with the legal conclusion reached by the court in that case, for the reasons set forth below.

To decide this case requires us to review in some detail the Supreme Court's decision in the *Egan* case. Egan was a civilian employee at a Navy submarine refit facility. As a condition of his continued employment, Egan was required to maintain a security clearance. Following a security investigation, the Navy denied Egan a security clearance, and for that reason he was subsequently removed from his position. He sought to appeal his removal to the Merit Systems Protection Board pursuant to 5 U.S.C. § 7513(d). The Board held that it did not have the authority to review the agency's denial of a security clearance as the basis for a removal action. This court reversed the Board's decision, holding that the Board was authorized to review the merits of the underlying agency decision to deny Egan a security clearance and thus could properly decide his claim that he was improperly removed. The Supreme Court then reversed this court, holding that the Board was correct in ruling that its jurisdiction under section 7513(d) did not include the authority to review an agency decision to withhold a security clearance.

The Supreme Court noted that although there was no express provision in section 7513(d) limiting the Board's competence to decide matters such as the denial of security clearances, general principles of law barred the Board from exercising jurisdiction over such matters. The question

whether to grant a security clearance to a particular employee, the Court held, is "a sensitive and inherently discretionary judgment call," which is "committed by law to the appropriate agency of the Executive Branch." *Egan,* 484 U.S. at 527, 108 S.Ct. 818. The Court noted that it is "obvious that no one has a 'right' to a security clearance," and that the "grant of a clearance requires an affirmative act of discretion on the part of the granting official. The general standard is that a clearance may be granted only when 'clearly consistent with the interests of the national security.'" *Id.* at 528, 108 S.Ct. 818.

Because each agency must have broad discretion to determine who may have access to classified information, the Court explained that

> it is not reasonably possible for an outside nonexpert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction [that a particular individual might compromise sensitive information] with confidence. Nor can such a body determine what constitutes an acceptable margin of error in assessing the potential risk.

*Egan,* 484 U.S. at 529, 108 S.Ct. 818. The Court noted that "unless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs," and it pointed out that the Civil Service Reform Act of 1978 "by its terms does not confer broad authority on the Board to review a security-clearance determination." *Id.* at 530, 108 S.Ct. 818. Because giving the Board jurisdiction to review the propriety of security clearance determinations "would inevitably ... involve the Board in second-guessing the agency's national security determinations," and because the Court considered it "extremely unlikely that Congress intended such a result when it passed the Act and created the Board," *id.* at 531–32, 108 S.Ct. 818, the Court held that review of the merits of a security clearance determination was not within the Board's jurisdiction under 5 U.S.C. § 7513(d). An employee who is subjected to an adverse agency action within the meaning of 5 U.S.C. § 7512 because of the denial of a security clearance is entitled to the procedural protections provided by 5 U.S.C. § 7513, the Court held, but not to review of the merits of the security clearance determination. *See Egan,* 484 U.S. at 530–31, 108 S.Ct. 818.

The principles we draw from the Court's decision in *Egan* are these: (1) there is no presumption that security clearance determinations will be subject to administrative or judicial review, as those determinations are committed to the broad discretion of the responsible Executive Branch agency; (2) unless Congress specifically provides otherwise, the Merit Systems Protection Board is not authorized to review security clearance determinations or agency actions based on security clearance determinations; and (3) when an agency action is challenged under the provisions of chapter 75 of title 5, the Board may determine whether a security clearance was denied, whether the security clearance was a requirement of the appellant's position, and whether the procedures set forth in section 7513 were followed, but the Board may not examine the underlying merits of the security clearance determination. *See King v. Alston,* 75 F.3d 657, 662–63 (Fed.Cir.1996); *Drumheller v. Department of the Army,* 49 F.3d 1566, 1571 (Fed.Cir.1995); *Lyles v. Department of the Army,* 864 F.2d 1581, 1583 (Fed.Cir.1989).

To be sure, *Egan* is not directly controlling in this case, for two reasons. First, *Egan* involved only chapter 75 of title 5, and in particular 5 U.S.C. § 7513, the statute governing appeals from adverse agency actions. It did not involve chapter 12 of title 5, and in particular 5 U.S.C. § 1221(a), the provision of the Whistleblower Protection Act of 1989 (WPA) that permits employees, after seeking review from the Office of Special Counsel, to obtain review of claims that they have been

subjected to adverse personnel actions in retaliation for whistleblowing. The Board in Mr. Hesse's case noted that it was unclear whether Mr. Hesse was limiting himself to an appeal under section 7513, or whether he was also attempting to invoke section 1221(a), since he sought corrective action from the Office of Special Counsel simultaneously with filing the Board appeal from his suspension. The Board found it unnecessary to decide that question, however, as it concluded that the analysis of the central legal issue was the same under both statutes.

Second, unlike *Egan*, this case involves a claim of whistleblowing. Mr. Hesse contends that the suspension of his security clearance is a "prohibited personnel practice" under the statute protecting whistleblower disclosures, 5 U.S.C. § 2302, even if, as *Egan* held, it is not reviewable in a case involving the more restrictive class of generally appealable agency actions set forth in 5 U.S.C. § 7512.

Notwithstanding those distinctions, we are persuaded that the principles underlying the *Egan* decision are applicable here and support the Board's conclusion that it lacked jurisdiction to consider the propriety of the suspension of Mr. Hesse's security clearance. The presence of a possible claim under section 1221(a), which was not present in *Egan*, does not call for a different result in this case because, as the Board concluded, the dispositive question under both statutes is the same: whether the Merit Systems Protection Board is authorized to review security clearance determinations and require that employees' security clearances be granted or reinstated. Under *Egan*, the answer to that question under section 7513(d) was no. The Court based its answer on the principle that Executive Branch agencies must be given broad discretion in making security clearance determinations, and that it would be improper, without a clear directive from Congress, to allow a nonexpert body, such as the Merit Systems Protection Board, to review the merits of such determinations.

Courts have applied those policies in a variety of other contexts. For example, other courts have held that security clearance determinations are not subject to judicial review in the context of a direct action by a private or government employee contesting the denial of a security clearance, *see Dorfmont v. Brown*, 913 F.2d 1399, 1401–02 (9th Cir.1990); *Jamil v. Secretary, Dep't of Defense*, 910 F.2d 1203, 1206 (4th Cir.1990); *Hill v. Department of the Air Force*, 844 F.2d 1407, 1413 (10th Cir.1988); an action under Title VII of the Civil Rights Act of 1964, *see Ryan v. Reno*, 168 F.3d 520, 523 (D.C.Cir.1999); *Becerra v. Dalton*, 94 F.3d 145, 149 (4th Cir.1996); *Perez v. FBI*, 71 F.3d 513, 514–15 (5th Cir.1995); *Brazil v. United States Dep't of the Navy*, 66 F.3d 193, 196–98 (9th Cir. 1995); an action under the Rehabilitation Act of 1973, *see Guillot v. Garrett*, 970 F.2d 1320, 1324–25 (4th Cir.1992); and an action under the Foreign Service Act, *see United States Info. Agency v. Krc*, 905 F.2d 389, 395–97 (D.C.Cir.1990). The same policies apply to the review that Mr. Hesse urges the Board to conduct under the aegis of the WPA. Accordingly, absent a clear indication from Congress that the Board was meant to review security clearance determinations when raised in an appeal under the WPA, the principles of *Egan* compel a similar result in this case.

That leads us to the second proposed distinction of *Egan*, which requires us to answer the question whether anything in the whistleblower protection provisions of the Civil Service Reform Act constitutes the kind of specific congressional authorization for the Merit Systems Protection Board to review security clearance determinations that the Supreme Court in *Egan* found wanting in chapter 75 of title 5. As originally enacted, the Civil Service Reform Act plainly did not contain any such specific authorization for the Board to review security clearance determinations. At that time, as now, the Act provided that an employee could obtain relief if the employee was subjected to any "personnel action" in retaliation for whistleblowing.

*See* 5 U.S.C. § 2302(b)(8) (1988). The Act listed 10 personnel actions, the last of which was a catch-all category. *See* 5 U.S.C. § 2302(a)(2) (1988). The first nine of the listed personnel actions were clearly inapplicable to Mr. Hesse's case, as they did not include a security clearance determination. *See* 5 U.S.C. § 2302(a)(2)(i)-(ix) (1988). The only other candidate, the catch-all clause, defined "personnel action" to include "any other significant change in duties or responsibilities which is inconsistent with the employee's salary or grade level." 5 U.S.C. § 2302(a)(2)(x) (1988). That provision, however, clearly does not constitute explicit congressional authorization to review security clearance determinations, because a security clearance is a prerequisite of employment in certain positions or of the performance of certain tasks, not a "duty or responsibility" of a position. It could be argued that the denial or revocation of a security clearance has an effect on the employee's duties and responsibilities, and that for that reason the catch-all provision should be interpreted to include security clearance determinations, but whatever the merits of that argument, it certainly cannot be said that the catch-all clause in the original version of 5 U.S.C. § 2302(a)(2) constituted a specific statement of congressional intent to allow review of such determinations.

In pressing his argument that section 2302(a)(2) reaches security clearance determinations, Mr. Hesse focuses on the 1994 amendment to that provision. It was at that time, he contends, that Congress made clear that it intended security clearance determinations to be treated as "personnel actions" for purposes of section 2302(a)(2) and thus to be reviewable in an action brought under the whistleblower protection provisions of the Civil Service Reform Act. The problem with that argument, however, is that the amended version of the Civil Service Reform Act is no more explicit in authorizing review of security clearance determinations than was the original version.

The only pertinent change in the Act made as a result of the 1994 amendment was in the catch-all clause of section 2302(a)(2). As noted, the original version of the catch-all clause read as follows: "any other significant change in duties or responsibilities which is inconsistent with the employee's salary or grade level." The 1994 amendment changed the language of the catch-all clause to read as follows: "any other significant change in duties, responsibilities, or working conditions." Although the two versions of the catch-all clause are somewhat different, the new language, like the old, does not advert in any way to security clearance determinations. The new language referring to "working conditions" most naturally connotes the physical conditions under which an employee labors, although it is possible to give it a broader interpretation to mean the conditions that the employee must satisfy to qualify for the job. *See Fort Stewart Sch. v. Federal Labor Relations Auth.*, 495 U.S. 641, 645, 110 S.Ct. 2043, 109 L.Ed.2d 659 (1990). In any event, the amended language is at best ambiguous and thus falls far short of constituting a specific statement of congressional intent to authorize review of security clearance determinations.

Mr. Hesse directs our attention to the legislative history of the 1994 amendment, which, unlike the statute itself, contains references to security clearance determinations. After a close review of the legislative history, however, we are not persuaded that it supports Mr. Hesse's argument, even if legislative history alone could provide the specificity required by *Egan.*

What the legislative history makes clear is that some in Congress wanted the Board to review security clearance determinations in the context of actions brought by whistleblowers. What is left far from clear, however, is whether that position was intended to be incorporated in the legislation that Congress actually enacted. Indeed, the changes in the proposed statutory language that occurred during the legislative process suggest the opposite.

The House bill to expand the protection for whistleblowers proposed to amend section 2302(a)(2) of title 5 by adding two new provisions to the list of personnel practices: the first was "a decision to require psychiatric testing or examination," and the second was "a denial, revocation, or other determination relating to a security clearance." H.R. 2970, 103rd. Cong. § 4(a)(1)(B) (1994). The House Report accompanying the bill made clear that the bill was intended to permit review of security clearance determinations. *See* H.R.Rep. No. 103–769, at 15 (1994) (the bill "is intended to legislatively convert Executive branch security clearance decisions into personnel decisions that an employee can allege constitute prohibited personnel practices").

The Senate employed a different approach. Rather than amending section 2302(a)(2), the Senate bill proposed to amend section 2302(b)(8) to proscribe any action taken by an agency to discriminate against or retaliate against an employee because of protected whistleblowing conduct. *See* S. 622, 103rd Cong. § 5(d) (1994). Although the statutory language was less specific than the House bill, the Senate Report suggested that the committee intended the Senate bill to include the loss of a security clearance, because the committee included a reference to the loss of security clearance as one of two examples of conduct that it intended the new legislation to cover. *See* S.Rep. No. 103–358, 103rd Cong. 2d Sess. at 10 (1994), U.S.Code Cong. & Admin.News 1994 at pp. 3549, 3558.

The House bill passed the House in the form reported by the House committee (except for some changes not pertinent here), *see* 140 Cong. Rec. 27,361 (1994), but the House bill was not enacted into law, nor was the bill reported by the Senate committee. The statute as ultimately enacted contained neither the specific reference to security clearances that was found in the House bill, nor the broad language from the Senate bill that would have made any retaliatory action reviewable by the Merit Systems Protection Board. In the statute as enacted, the only change in the pertinent portions of the WPA was the small change in the language of the catchall clause of section 2302(a)(2), which, as we noted earlier, falls far short of an explicit statement of congressional intent to subject security clearance determinations to review by the Merit Systems Protection Board.

There was little debate on the final version of the bill. Representative McCloskey, a strong advocate of permitting review of security clearances, argued that even though the version of the bill that was enacted omitted reference to security clearances, the Act still should be read broadly, to prohibit "arbitrarily suspending or terminating security clearances." *See* Cong. Rec. 29,352–53 (1994) (remarks of Rep. McCloskey). The Supreme Court, however, has warned us to be "wary of relying on the remarks of a single legislator," *Texas Indus., Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 644 n. 17, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981), and in light of Representative McCloskey's strong views on the matter, his remarks may simply reflect the hope that the enacted language would be interpreted as if the language he favored had actually been included in the legislation, even though it was not.

Congress's failure to enact the versions of the bill proposed by the two committees seriously undermines the force of Mr. Hesse's argument, which is based heavily on language from the two committee reports. It is reasonable to conclude that by declining to enact the language of either reported bill that would have governed security clearance determinations, Congress rejected the suggestion in the committee reports that the Merit Systems Protection Board should be authorized to review security clearance determinations in the context of whistleblower actions. *See Gulf Oil Corp. v. Copp Paving Co.,* 419 U.S. 186, 200, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974) (Congress's failure to enact a proposed version of a statute "strongly militates against a judgment that Congress intended a result that it expressly declined to enact"). In any event, however, the

legislative history does not provide clear support for Mr. Hesse's contention that Congress intended to include security clearance determinations within the scope of personnel actions covered by the Act. Thus, even if under some circumstances legislative history could be strong enough to constitute the specific statement of congressional intent that the Supreme Court required in the *Egan* case, it is not strong enough in this instance.* Accordingly, we agree with the Board that because 5 U.S.C. § 2302(a)(2), like the statute reviewed in *Egan*, lacks specific language authorizing the Board to review security clearance determinations, the Board was correct to conclude that it lacks authority to do so.

It is true, as Mr. Hesse asserts, that the Board's construction of section 2302(a)(2) will leave federal employees without recourse to the Board or the Special Counsel if they believe they have been denied security clearances in retaliation for whistleblowing. Employees, however, are not left wholly without recourse. As is illustrated by this case and its companion, the *Roach* case, employees typically have internal appeal procedures within their agencies through which to object to adverse decisions on security clearance issues. Moreover, because individual supervisors are typically not involved in the security clearance adjudication process, the risk of retaliation for protected disclosures may be less

in this context than in others. Perhaps for that reason, as the Special Counsel noted in her brief before the Board, the Office of Special Counsel has received only a handful of claims alleging whistleblower retaliation in the context of a security clearance determination since the 1994 amendments to the Civil Service Reform Act. We thus view with some skepticism Mr. Hesse's suggestion that the Board's jurisdictional ruling in this case, if affirmed, will create a huge loophole in the protection afforded to federal employees by the whistleblower protection provisions of that Act. In any event, when Congress amended the Act in 1994 it chose not to give express authority to the Board to review security clearance determinations, even though at the time the *Egan* Court had made quite clear that an explicit statement of Board authority was required. *See Cannon v. University of Chicago*, 441 U.S. 677, 696–99, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) (noting that Congress is presumed to know the law, particularly recent precedents that are directly applicable to the issue before it). Thus, because the Act does not specifically authorize the Board to review security clearance determinations, it cannot serve as a basis for Board jurisdiction in this case.

### III

Mr. Hesse raises several arguments in addition to his principal submission that

---

* The lack of clear guidance from the legislative history does not end with the fact that Congress did not enact either of the reported bills in the form in which it was reported. Even the House Report is damaging to Mr. Hesse's case in one important respect. Although the language of the House bill appears helpful to Mr. Hesse, the House Report noted a qualification to the bill's seemingly broad language. The House committee explained that its proposed amendment making security clearance determinations subject to review by the Merit Systems Protection Board would "not cover decisions concerning an individual's access to Sensitive Compartmentalized Information (SCI) [*i.e.*, certain particularly sensitive classified materials].... Decisions with respect to controlling access to SCI ... are not subject to review by the Merit Systems Protection

Board or the courts under this legislation." H.R. No. 103–769, at 15 (1994). Mr. Hesse contends in his brief that "it was the absence of SCI clearance which led to the decision ... to remove [him] from his position." If we were to credit that statement and give full credence to the statement by the House committee that SCI access determinations were not meant to fall within the reach of the new legislation, we would have to uphold the Board's ruling even if we concluded that Congress meant for the language that was ultimately enacted to be fully equivalent to the language that was in the House bill. We do not rest our judgment on that point, but we note that it demonstrates that even the legislative history on which Mr. Hesse relies is not uniformly favorable to his position.

the Board is statutorily authorized to review the suspension of his security clearance.

■ First, he contends that the procedures used by the Department of State violated his procedural rights under section 7513(b) and the Constitution. While acknowledging that he was given a hearing before the agency on the issue of the suspension of his security clearance, he notes that he was not permitted to produce witnesses or cross-examine those involved in the decision in his case.

During the proceedings before the agency pertaining to his indefinite suspension from his position, Mr. Hesse was entitled to the procedural protections set forth in 5 U.S.C. § 7513(b). The record reflects that he received all the procedural protections the statute requires, including advance written notice of his proposed suspension, an opportunity to respond to the charges against him and to furnish written material in support of his response, the right to be represented by an attorney or other representative, and a written decision.

■ To the extent that Mr. Hesse complains about the manner in which the proceeding leading to the suspension of his security clearance was conducted, the protections of section 7513(d) do not apply to that process, because the suspension of a security clearance is not an "action" within the meaning of 5 U.S.C. § 7512. Moreover, to the extent that Mr. Hesse is contending that he was denied due process by the procedure leading to the suspension of his security clearance, this court has held that a federal employee does not have a liberty or property interest in access to classified information. For that reason, this court has held, the Due Process Clause of the Fifth Amendment has no application to a proceeding to review an employee's security clearance. *See Jones v. Department of the Navy*, 978 F.2d 1223,-1225–26 (Fed.Cir.1992).

■ Second, Mr. Hesse claims that he should have been reassigned to a nonsensitive position rather than being suspended

from employment with the agency. This court, however, has held that an employee has a right to be transferred to a nonsensitive position only if that right is manifested in statute or regulation. *See Griffin v. Defense Mapping Agency*, 864 F.2d 1579, 1580 (Fed.Cir.1989); *Lyles v. Department of the Army*, 864 F.2d at 1583–84. Mr. Hesse argues that section 233.3 of volume 12 of the State Department's Foreign Affairs Manual gives him a right to such a reassignment, but that provision sets forth the procedures to be followed pending an investigation into whether an employee's security clearance should be modified or revoked, not after the employee's security clearance has been suspended. Mr. Hesse was not suspended from his position until after the conclusion of the investigation in his case. Moreover, section 233.3 of the Foreign Affairs Manual applies by its terms to proceedings under 5 U.S.C. § 7532, not to proceedings under 5 U.S.C. § 7513, which was the statute under which Mr. Hesse was suspended from his position with the agency. *See Egan*, 484 U.S. at 532–34, 108 S.Ct. 818 (federal employee may be removed on national security grounds under either section 7513 or section 7532). Accordingly, the procedures set forth in section 233.3 of volume 12 of the Foreign Affairs Manual do not apply to him.

■ Finally, Mr. Hesse argues that his due process rights were violated because the agency never clearly defined how his actions compromised national security or how the efficiency of the service was improved by his suspension. There is no merit to that contention. The agency gave Mr. Hesse considerable information about the incidents that led it to conclude that he was a poor security risk. With respect to the decision to suspend him from his position once his security clearance had been suspended, the agency explained that a security clearance was an essential prerequisite for his position, and that he could

not continue to hold his position once he had lost his security clearance. The agency thus provided Mr. Hesse with ample information about why it took the action it did. Due process did not require a fuller explanation.

*AFFIRMED.*