**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2014 MSPB 70**

Docket Nos. DE-0752-12-0039-I-3
DE-0752-12-0040-I-3

**Kristi L. Putnam,**

**Appellant,**

**v.**

**Department of Homeland Security,**

**Agency.**

August 27, 2014

Kevin L. Owen, Esquire, and Rosalind Herendeen, Silver Spring,
Maryland, for the appellant.

Remy N. Savin, San Francisco, California, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

**OPINION AND ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which affirmed her indefinite suspension and dismissed her involuntary retirement appeal for lack of jurisdiction.  Petition for Review (PFR) File, Tab 3; MSPB Docket No. DE-0752-12-0039-I-3 (0039), Initial Appeal File (IAF), Tab 6, Initial

Decision (ID).[1]  For the reasons that follow, the administrative judge's initial decision affirming the appellant's indefinite suspension is AFFIRMED AS MODIFIED by this Opinion and Order, and the administrative judge's dismissal of the appellant's involuntary retirement appeal is AFFIRMED.

## BACKGROUND

¶2  The following basic facts are not in dispute.  The appellant served as the Assistant Federal Security Director at the Grand Junction Regional Airport in Grand Junction, Colorado.  0039, IAF, Tab 2 at 136.  As a condition of her position, the appellant was required to maintain a security clearance.  *Id.* at 122. On October 26, 2010, citing statements the appellant had made to local police, the agency placed the appellant on administrative leave.  MSPB Docket No. DE-0752-12-0040-I-3 (0040), IAF, Tab 3 at 49.  Based upon the appellant's statements to the police, the agency suspended the appellant's security clearance on January 26, 2011, *id.* at 66-67, and it thereafter proposed the appellant's indefinite suspension on February 1, 2011, citing the suspension of her security clearance "based on allegations regarding [her] mental health and personal conduct" as outlined in the agency's January 26, 2011 letter, *id.* at 78-79.  In response to the appellant's request for the information the agency relied on in proposing her suspension, the agency explained that it only relied on the notice it received from its Personnel Security Division that the appellant's security clearance had been suspended.  0040, IAF, Tab 3 at 65.  The deciding official

---

[1] As the administrative judge explained in his initial decision, some of the relevant submissions are filed in MSPB Docket No. DE-0752-12-0039-I-3, while others are filed in MSPB Docket No. DE-0752-12-0040-I-3.  At the time of their filing, the administrative judge treated MSPB Docket No. DE-0752-12-0039-I-1 as challenging the appellant's indefinite suspension, and MSPB Docket No. DE-0752-12-0040-I-1 as challenging the appellant's alleged involuntary retirement.  We cite to the petition for review file in the lead docket number assigned to these joined matters, MSPB Docket No. DE-0752-12-0039-I-3.  Because the underlying factual material is contained in both initial appeal files, we will cite to the respective initial appeal files where necessary.

subsequently imposed the appellant's indefinite suspension effective March 10, 2011. 0039, IAF, Tab 2 at 55-57.

¶3      The appellant amended a pending equal employment opportunity (EEO) complaint she had filed with the agency to include a challenge to her indefinite suspension, and after the passage of 120 days, she filed her appeal with the Board challenging both her indefinite suspension and her intervening decision to retire after the agency revoked her security clearance in August 2011. *See* MSPB Docket No. DE-0752-13-0039-I-1, IAF, Tab 1. The appellant withdrew her request for a hearing, and based on the written record, the administrative judge affirmed the appellant's indefinite suspension and dismissed her involuntary retirement appeal for lack of jurisdiction. ID at 7-16. In reaching his decision on the appellant's indefinite suspension, the administrative judge applied the Board's then-controlling case law, which held, inter alia, that an employee had a due process right to notice of the reasons for the suspension of her security clearance and to reply to a deciding official who had the authority to change the outcome of the proposed adverse action. *See, e.g.*, *McGriff v. Department of the Navy*, 118 M.S.P.R. 89, ¶¶ 25, 33 (2012). Applying these standards, the administrative judge found that the agency afforded the appellant a meaningful opportunity to respond to the suspension of her security clearance, thus also satisfying due process concerning her proposed indefinite suspension, and that the deciding official had the authority to change the outcome of her proposed indefinite suspension by reassigning her but that he elected not to exercise his discretion under the facts of this case. ID at 12-14. The administrative judge further explained that he would not adjudicate the appellant's disability discrimination claim challenging the agency's decision not to reassign her because it was intertwined with the agency's decision to suspend her clearance, ID at 9, and, applying the Board's jurisdictional standard over a constructive adverse action, he found that the appellant failed to nonfrivolously allege that her

working conditions were so intolerable that she had no choice but to retire, ID at 14-16.

¶4 The appellant has filed a petition for review of the administrative judge's initial decision. PFR File, Tab 3. After the agency filed a response to the petition for review, and the appellant filed a reply, PFR File, Tabs 6-7, the U.S. Court of Appeals for the Federal Circuit issued its decision in *Gargiulo v. Department of Homeland Security*, 727 F.3d 1181, 1185 (Fed. Cir. 2013), holding that employees have "no due process rights with respect to the procedures used to determine whether to suspend or revoke [a] security clearance," and also explaining that while employees have due process rights to contest indefinite suspensions as adverse actions, those rights "[do] not include the right to contest the merits of the decision to suspend [their] security clearance[s]." The agency moved to submit additional argument on petition for review concerning *Gargiulo*'s impact on this case, PFR File, Tab 8, and the Board granted the agency's motion, giving both the agency and the appellant an opportunity to submit additional argument on this issue, PFR File, Tabs 17-18.

¶5 As explained below, although we agree with the administrative judge's ultimate conclusion sustaining the appellant's indefinite suspension, the Federal Circuit's decision in *Gargiulo*, and the Board's recent decision in *Buelna v. Department of Homeland Security*, 121 M.S.P.R. 262 (2014), require a different analysis of the appellant's appeal of her indefinite suspension. Applying the standards outlined in *Gargiulo* and *Buelna*, we AFFIRM AS MODIFIED the administrative judge's initial decision sustaining the appellant's indefinite suspension. Because these decisions do not affect the disposition of the appellant's involuntary retirement appeal, and because we agree with the administrative judge's jurisdictional dismissal of this claim, we AFFIRM the initial decision regarding the appellant's allegation of an involuntary retirement, and we AFFIRM the administrative judge's decision not to adjudicate the

appellant's disability discrimination affirmative defense because it is intertwined with the agency's security clearance determination.

## ANALYSIS

<u>Recent case law sets forth the analysis to be used when an adverse action is based on the suspension or revocation of a security clearance.</u>

¶6     In *Buelna*, the Board recently outlined the principles and standards applicable in chapter 75 appeals of adverse actions based on the suspension or revocation of a security clearance. *See* [121 M.S.P.R. 262](#), ¶¶ 13-15, 23-25, 27-31. First, relying on the Federal Circuit's decision in *Gargiulo*, the Board reaffirmed that employees have a due process right in connection with an indefinite suspension or removal based upon the suspension or revocation of a security clearance and that the Board also has the authority to review whether an agency provided an employee with due process in taking such an adverse action. *See Buelna*, [121 M.S.P.R. 262](#), ¶¶ 13-15 (citing, inter alia, *Gargiulo*, 727 F.3d at 1185).

¶7     Second, pursuant to the Federal Circuit's decision in *Gargiulo*, the Board explained that due process does not require that an employee have an opportunity to challenge the merits of the agency's security clearance suspension or revocation. *Buelna*, [121 M.S.P.R. 262](#), ¶¶ 18 n.7, 24. In reaching this conclusion, the Board further explained that, in cases where the employee *does* receive an opportunity to contest the clearance determination prior to the adverse action proceedings, that opportunity alone is insufficient to satisfy due process concerning the proposed adverse action because due process requires that the employee have a right to respond to a proposed adverse action, which is distinct from a security clearance determination. *Id.*, ¶ 24 n.9.

¶8     Next, the Board addressed an issue left open by the court in *Gargiulo*, *see* 727 F.3d at 1185 n.4, and it held that due process does not demand that the deciding official consider alternatives to the proposed adverse action that are prohibited, impracticable, or outside management's purview.

*Buelna*, 121 M.S.P.R. 262, ¶ 27.  In reaching this conclusion, the Board explained that due process in connection with an adverse action based on the suspension or revocation of a security clearance is limited "to invok[ing] the discretion of a deciding official with authority to change the outcome of the proposed action to the extent that may have been feasible."  *Id*., ¶ 28.  This standard differed from the Board's earlier approach, which had held that due process required that the deciding official have the authority to change the outcome of the proposed adverse action by either reinstating the appellant's access to classified information or by reassigning her to a position not requiring such access.  *See, e.g.*, *Diehl v. Department of the Army*, 118 M.S.P.R. 344, ¶ 12 (2012).

¶9        Lastly, the Board expounded upon the impact of the *Ward*/*Stone*[2] line of authority on adverse actions based upon the suspension or revocation of a security clearance.  *See Buelna*, 121 M.S.P.R. 262, ¶¶ 30-31.  The Board explained that the only information material to an agency's charge involving the suspension or revocation of a clearance is whether the employee's position required a security clearance and whether the clearance was suspended or revoked; the Board concluded that any additional information a deciding official may consider in connection with such a charge cannot be new and material information under *Ward*/*Stone*.  *Id*., ¶ 31.

¶10      Regarding the deciding official's penalty determination, however, the Board found that, under the *Ward*/*Stone* line of cases, an employee is entitled to advanced notice of all of the information a deciding official may rely on in considering the employee's proposed suspension or removal, including information concerning the extent to which "the deciding official's penalty determination [may be] influenced by the factual basis for the underlying security

---

[2] *Ward v. U.S. Postal Service*, 634 F.3d 1274 (Fed. Cir. 2011); *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368 (Fed. Cir. 1999).

clearance determination." *Id*. In the event that an appellant cannot establish a *Ward*/*Stone* violation concerning the deciding official's penalty determination, as in all other instances involving alleged due process violations, the Board will then conduct a harmful error analysis to determine if the agency erred in the application of its procedures, and, if so, whether such an error caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. *Id*., ¶ 33; *see Bennett v. Department of Justice*, 119 M.S.P.R. 685, ¶ 12 (2013) (under *Ward*/*Stone*, if no due process violation is found, then a harmful error analysis must be conducted).

The appellant's indefinite suspension is AFFIRMED.

¶11    As explained above, the administrative judge did not have the benefit of our decision in *Buelna*, or the Federal Circuit's decision in *Gargiulo*, when he issued his initial decision sustaining the appellant's indefinite suspension. Thus, to the extent that the initial decision considered whether the appellant was afforded due process in connection with the agency's security clearance determination, and to the extent that the administrative judge found that the process afforded the appellant in connection with the security clearance determination satisfied her due process rights as to the adverse action, *see* ID at 8, 12, we MODIFY the initial decision and AFFIRM the charge underlying the indefinite suspension based on the undisputed facts that the appellant was required to maintain a security clearance as a condition of her position of employment and that her clearance was suspended. *See Buelna*, 121 M.S.P.R. 262, ¶¶ 23, 31; 0039, IAF, Tab 2 at 55-57, 78-79; *see also Ulep v. Department of the Army*, 120 M.S.P.R. 579, ¶ 4 (2014) (in an appeal based on the denial, revocation, or suspension of a security clearance, the Board's authority is limited to determining if a position requires a clearance; whether the clearance was denied, revoked, or suspended; and whether the procedural protections of 5 U.S.C. § 7513 were followed).

¶12   Citing the Board's pre-*Gargiulo* decisions in *McGriff*, 118 M.S.P.R. 89, and *Diehl*, 118 M.S.P.R. 344, the appellant argues on petition for review that her due process rights were violated because the deciding official did not have the authority to impose a penalty other than her proposed indefinite suspension. PFR File, Tab 3 at 13-16. Under our recent decision in *Buelna*, however, due process in the context of an adverse action based upon the suspension or revocation of a security clearance does not require that the deciding official have the unfettered discretion to take any action he or she believes is appropriate upon considering the proposed adverse action. *See Buelna*, 121 M.S.P.R. 262, ¶ 27 (due process does not demand that the deciding official consider alternatives that are prohibited, impracticable, or outside management's purview). Thus, the appellant's assertion of a due process violation based on the deciding official's purported limited authority to select a penalty other than the appellant's proposed suspension is no longer germane to the issues in this case. *Id*.

¶13   We also find that the appellant's assertion that the deciding official had limited authority to impose an alternative penalty is unsupported. Although the appellant argues that the deciding official had no authority to reassign her, the deciding official testified that he had the authority to consider reassigning the appellant to another position but that he exercised his discretion and elected not to reassign her under the facts of this case. 0040, IAF, Tab 3 at 73-74 (deposition of the deciding official). Although the appellant ascribes error to the deciding official's decision, when a security clearance has been suspended or revoked, "the Board does not have the authority to review the feasibility of [] reassignment in the absence of an additional agency regulation or policy statement providing for such a transfer." *Biggers v. Department of the Navy*, 745 F.3d 1360, 1362 n.1 (Fed. Cir. 2014); *see Schnedar v. Department of the Air Force*, 120 M.S.P.R. 516, ¶ 7 n.1 (2014). Here, there is no evidence that the agency has a policy of compulsory reassignment before imposing an indefinite suspension. *See* ID at 15. Thus, under our due process standard articulated in *Buelna*, we find that the

appellant had the opportunity to invoke the discretion of the deciding official, thereby satisfying the minimum requirements of due process as to her indefinite suspension. *See Buelna*, 121 M.S.P.R. 262, ¶ 28.

¶14 The appellant also argues on petition for review that the deciding official improperly considered the underlying reasons supporting the suspension of her security clearance in making his penalty determination, thus violating her due process rights under *Ward*/*Stone*. PFR File, Tab 3 at 16-19; *see Buelna*, 121 M.S.P.R. 262, ¶ 31. We do not agree.

¶15 The Board's decisions under *Ward*/*Stone* recognize that not all ex parte communications rise to the level of due process violations; rather, only ex parte communications which introduce new and material information to the deciding official are constitutionally infirm. *Lange v. Department of Justice*, 119 M.S.P.R. 625, ¶ 8 (2013). Here, based upon the language and scope of information cited in the agency's notice of proposed indefinite suspension, we find that the deciding official did not consider new and material information in rendering his penalty analysis. The agency's notice of proposed indefinite suspension explained that the appellant's indefinite suspension was being proposed based upon the suspension of her security clearance and that the agency's security office "suspended [her] security clearance based on allegations regarding [the appellant's] mental health and personal conduct. The details of the basis for suspension of [the appellant's] access to classified information are contained in the letter issued . . . [by the agency's security office] on January 26, 2011." 0039, IAF, Tab 2 at 78. In response to her proposed indefinite suspension, moreover, the appellant, through counsel, specifically addressed, and contested, the underlying reasons cited by the agency in support of its interim security clearance determination, thus placing the underlying reasons for her security clearance suspension—i.e., her personal conduct—into controversy before the deciding official. 0040, IAF, Tab 2 at 61 (the appellant's response to the deciding official arguing that the appellant is fit for duty and that she does not

present a danger to herself or others). Thus, to the extent that the deciding official may have considered the reasons for the appellant's security clearance suspension in rendering his penalty determination, we find this information did not constitute new and material information under *Ward/Stone*.[3] *See Buelna*, 121 M.S.P.R. 262, ¶ 32 (finding that the underlying reasons for the appellant's security clearance suspension had already been cited in the proposal notice and did not violate *Ward/Stone*); *Lange*, 119 M.S.P.R. 625, ¶ 8 (information is new and material when, inter alia, the employee did not know about the information and did not have a chance to respond to it).

¶16      In response to the Board's motion granting the parties an additional opportunity to brief the effect of *Gargiulo* on this case, the appellant contends that the agency committed harmful error in connection with her indefinite suspension when it took over 6 months to decide whether to reinstate or revoke her security clearance. PFR File, Tab 18 at 8. However, the appellant's indefinite suspension was imposed in March 2011, and the decision to revoke her clearance was not issued until August 2011. 0039, IAF, Tab 2 at 48-53 (revocation of her clearance), 55-57 (decision on the indefinite suspension). The decision to revoke the appellant's clearance almost 5 months *after* her indefinite suspension went into effect could not constitute harmful error in connection with the decision to impose the indefinite suspension. *See* 5 C.F.R. § 1201.56(c)(3) (defining harmful error as "[e]rror by the agency . . . that is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error").

---

[3] We also find that, to the extent that the deciding official considered this information, his consideration does not constitute harmful error.

<u>The administrative judge properly found that the Board could not adjudicate the appellant's disability discrimination claim.</u>

¶17      The appellant also argues on petition for review that the administrative judge erred in concluding that the Board is precluded from reviewing allegations of discrimination in connection with an adverse action based upon the suspension or revocation of a security clearance.  PFR File, Tab 3 at 19-23; ID at 9.  The appellant argued below that the agency discriminated against her on the basis of a perceived mental disability when the deciding official declined to reassign her and instead imposed her indefinite suspension.  0040, IAF, Tab 3 at 36-46.  For the reasons that follow, we find that the administrative judge properly declined to adjudicate this affirmative defense.

¶18      In *Pangarova v. Department of the Army*, 42 M.S.P.R. 319, 322-23 (1989), the Board found that it is precluded from reviewing allegations of prohibited discrimination and reprisal when such affirmative defenses relate to the revocation of a security clearance.  Analyzing an appellant's discrimination and reprisal claims in such cases would require the Board to focus on the validity of the agency's legitimate, nondiscriminatory reason for taking the challenged action, i.e., the validity of the security clearance determination. *Id.* at 323.  Thus, the Board is not permitted to adjudicate whether an agency's adverse action, which is premised on the suspension or revocation of a security clearance, constitutes impermissible discrimination or reprisal. *See, e.g.*, *Doe v. Department of Justice*, 118 M.S.P.R. 434, ¶ 40 (2012); *Hesse v. Department of State*, 82 M.S.P.R. 489, ¶ 9 (1999), *aff'd*, 217 F.3d 1372 (Fed. Cir. 2000); *Pangarova*, 42 M.S.P.R. at 322-23.

¶19      The appellant maintains on review that she has presented a colorable claim of disability-based discrimination in connection with the agency's decision to indefinitely suspend her when it failed to reassign her to a nonsensitive position within the agency.  PFR File, Tab 3 at 19-23.  A cursory review of the elements of proof needed to prevail on such a claim demonstrates that it would require the

Board to review the propriety of the agency's security clearance determination. We find no reason to depart from the Board's precedent finding that it has no authority to review allegations of prohibited discrimination or reprisal related to the revocation or suspension of a security clearance. *See Doe*, 118 M.S.P.R. 434, ¶ 40; *Hesse*, 82 M.S.P.R. 489, ¶¶ 7, 9; *Pangarova*, 42 M.S.P.R. at 322-23.[4]

The administrative judge properly dismissed the appellant's involuntary retirement claim for lack of jurisdiction.

¶20        Finally, the appellant argues on review that the administrative judge wrongly dismissed her allegation of an involuntary retirement for lack of jurisdiction. PFR File, Tab 3 at 18-19. We find, however, that the administrative judge properly dismissed this claim. ID at 14-16.

¶21        A retirement is presumed to be voluntary and outside of the Board's jurisdiction. *Mims v. Social Security Administration*, 120 M.S.P.R. 213, ¶ 16 (2013). An involuntary retirement, however, is equivalent to a forced removal within the Board's jurisdiction under chapter 75. *Id.* An appellant must make nonfrivolous allegations of jurisdiction to be entitled to a hearing, at which point she would be required to prove her claim by a preponderance of the evidence. *Id.* An appellant who claims that her retirement was involuntary may rebut the presumption of voluntariness in a variety of ways, including by showing that the retirement was the result of intolerable working conditions. *Id.*, ¶ 17; *see Conforto v. Merit Systems Protection Board*, 713 F.3d 1111, 1121 (Fed. Cir. 2013). Here, the appellant argued that her retirement was the product of coercion

---

[4] In *Helms v. Department of the Army*, 114 M.S.P.R. 447, ¶ 9 n.* (2010), the Board assumed without deciding that an appellant could maintain a disparate treatment claim based upon an allegation that other employees outside of the appellant's protected class were treated more favorably, i.e., reassigned to positions which did not require security clearances, as compared to the appellant, who was subjected to a more severe adverse action. Because the appellant makes no such allegation of disparate treatment in this case, we do not resolve the issue left open in *Helms*.

based upon intolerable working conditions flowing from the suspension, and subsequent revocation, of her security clearance. ID at 15. The administrative judge found that the appellant failed to nonfrivolously allege that these circumstances left her no choice but to retire. *Id.* We agree.

¶22    As the Federal Circuit recently observed, "[t]he doctrine of coercive involuntariness is a narrow one, requiring that the employee satisfy a demanding legal standard." *Conforto*, 713 F.3d at 1121. "An employee's dissatisfaction with the options that an agency has made available to him is not sufficient to render his decision to resign or retire involuntary." *Id.* Accordingly, "coerced involuntariness does not apply if the employee resigns or retires because he does not like agency decisions such as a new assignment, a transfer, or other measures that the agency is authorized to adopt, even if those measures make continuation in the job so unpleasant . . . that he feels he has no realistic option but to leave." *Id.* at 1121-22. Importantly, moreover, under this test for involuntariness, "the coercion must be the result of improper acts by the agency." *Id.* at 1122.

¶23    Here, the appellant argues that the decisions to suspend her clearance and to place her on indefinite suspension left her no realistic alternative but to retire from federal service. 0040, IAF, Tab 3 at 29-30. These allegations, however, fail to meet the "demanding legal standard" required to demonstrate coercion. *See Conforto*, 713 F.3d at 1121. As the administrative judge correctly explained, the agency had not yet reached a final decision to permanently revoke the appellant's security clearance at the time of her retirement, and it remained possible that she would be reinstated to employment in the event her clearance was reinstated. ID at 15. We do not agree that the suspension of a clearance alone rises to the level of coercion for the purposes of a constructive adverse action. The appellant's choice to retire, rather than await the final disposition of her security clearance determination, was not the result of improper pressure, intimidation, or coercion. ID at 14-16. Additionally, because of the Board's limited scope of review

involving the suspension or revocation of a security clearance, we cannot consider whether the agency committed any improper acts in connection with its security clearance determination, *see Gargiulo*, 727 F.3d at 1185, and we have otherwise found no evidence of any improper act in the course of the agency's decision to indefinitely suspend the appellant that could supply the jurisdictional basis for an appeal of an involuntary retirement, *see Schnedar*, 120 M.S.P.R. 516, ¶¶ 8, 12.

ORDER

¶24    For the foregoing reasons, we AFFIRM AS MODIFIED the initial decision sustaining the appellant's indefinite suspension, we AFFIRM the administrative judge's decision not to adjudicate the appellant's disability discrimination affirmative defense, and we AFFIRM the initial decision dismissing the appellant's involuntary retirement appeal for lack of jurisdiction.  This is the final decision of the Merit Systems Protection Board in this appeal.  Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS
IN MSPB DOCKET NO. DE-0752-12-0039-I-3

You have the right to request further review of the final decision in MSPB Docket No. DE-0752-12-0039-I-3 regarding the indefinite suspension.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC).  *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court.  *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e5(f) and 29 U.S.C. § 794a.

NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS
IN MSPB DOCKET NO. DE-0752-12-0040-I-3

You have the right to request further review of the final decision in MSPB Docket No. DE-0752-12-0040-I-3 regarding the involuntary retirement.

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for your court appeal, you may visit our website at http://www.mspb.gov/probono for a list of

attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the court. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.