# United States Court of Appeals for the Federal Circuit

---

**NICHOLAS JAY WILSON,**

*Petitioner*

**v.**

**DEPARTMENT OF THE NAVY,**

*Respondent*

---

2015-3225

---

Petition for review of the Merit Systems Protection Board in No. DC-0752-15-0038-I-1.

---

Decided: December 7, 2016

---

MATTHEW AUGUST LEFANDE, Matthew August LeFande Attorney at Law PLLC, Arlington, VA, argued for petitioner.

RENEE BURBANK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., ELIZABETH M. HOSFORD.

---

Before O'MALLEY, MAYER, and STOLL, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Nicholas Wilson ("Wilson") seeks review of the Merit Systems Protection Board's ("the Board") decision denying his request for corrective action under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. § 4301, *et seq*. Specifically, Wilson alleged that the Department of Energy ("the DOE") improperly revoked his security clearance, and the Department of the Navy ("the Navy") improperly terminated his employment thereafter. The Board rejected Wilson's claims, finding that it lacked the authority to review adverse security clearance determinations and that the Navy had not acted improperly in terminating Wilson given the revoked clearance. *Wilson v. Dep't of the Navy*, 122 M.S.P.R. 585 (2015). For the following reasons, we affirm.

BACKGROUND

A.  Clearance Revocation and Termination

Wilson worked as a civilian Resource Analyst at the Nuclear Propulsion Directorate at the Naval Sea Systems Command, a position that required him to hold a DOE security clearance ("Q clearance"). On January 8, 2014, the DOE suspended Wilson's security clearance. The DOE listed as security concerns that Wilson: (1) knowingly brought a personal firearm onto a Navy facility in violation of regulations and directions he received; (2) armed himself with a personal weapon while acting as a Metropolitan Police Department ("MPD") reserve officer, contrary to regulations; and (3) made false statements and false time and attendance entries to his civilian employer, the Naval Reserve Unit and the MPD. Wilson maintains that he brought his firearm to the Navy facility in response to the Washington Navy Yard shooting that occurred on September 16, 2013, in perceived fulfillment of his duty as a Navy Reservist.

Wilson argued to the DOE that the clearance revocation was based on his service as a Naval Reservist, in violation of USERRA. Unpersuaded, on July 25, 2014, the DOE revoked Wilson's security clearance. On July 29, 2014, based on the DOE's revocation, Wilson's supervisor at the Department of the Navy proposed Wilson's removal. Wilson filed a response to the Navy's proposal, arguing that the revocation violated USERRA and his due process rights. Nevertheless, on September 12, 2014, the Navy removed Wilson from federal service because he no longer had the security clearance that was a prerequisite for his position. Wilson appealed to the Board.

## B. The AJ's Initial Decision

In an initial decision, the administrative judge ("AJ") determined that the Board did not have authority to consider claims of discrimination or reprisal in the context of an appeal from a removal based on security clearance revocation. In particular, the AJ stated that she would not allow discovery, hear witnesses, or consider evidence regarding Wilson's USERRA defense, as it was entirely premised on the allegedly improper revocation. The AJ determined that she could only decide the facts of: (1) whether Wilson's security clearance was required for his former position, and (2) whether it was actually revoked. She answered both of those questions in the affirmative and Wilson does not dispute those conclusions.

Additionally, because Wilson alleged that the Navy violated his due process rights, the AJ examined whether the Navy provided him the procedural protections of 5 U.S.C. § 7513(b): 30 days advance written notice, reasonable time to answer, notification of the right of representation by an attorney, and provision of a written decision detailing the agency's reasoning. Looking to the record, the AJ found that the Navy proposed Wilson's removal in writing, gave him a reasonable time to re-

spond, notified Wilson of his right to an attorney, and provided a written decision as to the agency's reasoning. The AJ also found that the Navy did not have a policy or regulation to reassign employees to alternate positions that do not require a security clearance. Absent such a policy, the AJ concluded, the Navy was not required to reassign Wilson to a position that did not require a security clearance. *See Griffin v. Def. Mapping Agency*, 864 F.2d 1579, 1580–81 (Fed. Cir. 1989) ("[I]f the Defense Mapping Agency had an 'existing policy,' manifested by regulation, to transfer applicants who unsuccessfully seek a security clearance to nonsensitive positions if available, it could be held to that policy and the Board could review its efforts. In the absence of this policy, the Board has no role."). Because the investigation and subsequent procedures were consistent with agency policy, the AJ sustained the agency's decision. Wilson appealed.

## C. Appeal to the Board

The Board issued its final decision on August 5, 2015. Wilson had argued that the AJ's decision to not allow discovery, hear witnesses, or consider evidence regarding his USERRA defense was in error. USERRA, Wilson argued, was intended to be broadly construed—such that the Board could (and should) review the merits of his security revocation because it constituted a violation of USERRA. Wilson also noted that he did not claim there was a procedural violation in the *course of* the agency's revocation of his security clearance, but rather that the *revocation itself* violated USERRA. That is, Wilson argued that the agency revoked his security clearance based on his military service, and the revocation was the proximate cause of his dismissal; therefore, the Board must examine the merits of the revocation to determine whether there was a violation of USERRA.

The Board noted at the outset that it could not review agency revocations of security clearances because such

revocations are not considered adverse actions. The Board relied in particular on *Department of the Navy v. Egan*, 484 U.S. 518 (1988), stating:

> The Board has thus interpreted *Egan* to preclude review of allegations of prohibited discrimination and reprisal when such affirmative defenses relate to the revocation of a security clearance. *Pangarova* [*v. Dep't of the Army*], 42 M.S.P.R. [319], 322 [(1989)]. Our reviewing court also has taken this approach. *See, e.g., Adams v. Department of Defense,* 688 F.3d 1330, 1334 (Fed. Cir. 2012) (stating that neither the Federal Circuit, nor the Board, has authority to review a charge that retaliation and discrimination were the reasons for revocation of a security clearance).

*Wilson*, 122 M.S.P.R. at 589. Unless Congress has specifically authorized otherwise, the Board held, it cannot review security clearance determinations. Wilson's assertion that USERRA did offer such authorization was rejected; the Board found USERRA's "[s]hall adjudicate any complaint" language insufficiently explicit to "constitute a specific statement of congressional intent." *Id.* (citing *Hesse v. Dep't of State*, 217 F.3d 1372, 1378 (Fed. Cir. 2000)). The Board thus held that it lacked the authority to consider Wilson's USERRA claim as it related to the revocation of his security clearance, and denied Wilson's petition for review, finding no error in the AJ's decision. Wilson timely appealed to this court, and we have jurisdiction pursuant to 5 U.S.C. § 7703(b)(1)(A).

## DISCUSSION

The scope of our review in an appeal from a decision of the Board is limited. We must affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or

regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

Wilson maintains on appeal that the Board should have reviewed whether the security clearance revocation was in violation of USERRA. Specifically, he argues that: (1) USERRA necessarily authorizes review of security clearance determinations, (2) alternatively, the Board could have reviewed whether his revocation was "initiated" based on a discriminatory motivation without reviewing the merits of the revocation itself, and (3) irrespective of his revocation, he was entitled to reemployment in a similar position under USERRA. None of these arguments are persuasive.

In *Egan*, the Supreme Court "established that MSPB review of an agency's denial or revocation of a security clearance is limited to determining whether the agency provided minimal due process protection." *Adams v. Dep't of Def.*, 688 F.3d 1330, 1334 (Fed. Cir. 2012) (citing *Egan*, 484 U.S. at 529–31). That is the well-established limit of our review; "neither this court nor the [Board] has authority to review the charge that . . . discrimination w[as] the reason[] for revocation of the security clearance." *Id.* Congress has not "specifically . . . provided otherwise" in this case, because USERRA makes no mention of security clearances, explicitly or otherwise. *Egan*, 484 U.S. at 530. Nor does Wilson—relying solely on USERRA on appeal— raise a constitutional claim that might transcend these limitations. *See, e.g.*, *Dubbs v. CIA*, 866 F.2d 1114, 1120 (9th Cir. 1989) (permitting review of a security clearance determination on Equal Protection grounds).

Wilson's shift in the alternative to the initiation of revocation—as opposed to the "merits"—relies on a distinction without a difference. The core of Wilson's allegation is that his security clearance revocation was initiated based on "false" complaints and accusations. Because the DOE's security determination was based on the infor-

mation contained therein, it evaluated the trustworthiness of those statements as part of its determination—and specifically found them reliable. If the Board—or this court—were to reverse or remand on the basis that those statements were false, it would therefore necessarily involve "second-guessing . . . national security determinations" in abrogation of *Egan. Kaplan v. Conyers*, 733 F.3d 1148, 1155 (Fed. Cir. 2013).

Wilson's reliance on *Rattigan v. Holder*, 689 F.3d 764 (D.C. Cir. 2012), is misplaced. In *Rattigan*, the D.C. Circuit stated:

> The question, then, is whether we must bar reporting and referral claims altogether, as the government urges, or whether we can sufficiently minimize the chilling effect of Title VII liability by narrowing the scope of such claims. We ask this question because it is our duty not only to follow *Egan*, but also to 'preserv[e] to the maximum extent possible Title VII's important protections against workplace discrimination and retaliation.' . . . Title VII claims based on *knowingly false* reporting present no serious risk of chill, [so] we believe that claims of knowingly false security reports or referrals can coexist with *Egan* . . . .

*Rattigan*, 689 F.3d at 770 (quoting *Rattigan v. Holder*, 643 F.3d 975, 984 (D.C. Cir. 2011)). Even if this court were to follow the approach set forth in *Rattigan*, which we are not required to do, the "knowingly false" requirement of *Rattigan* has not been met here given the DOE's findings of reliability.

Nor is Wilson entitled to reemployment independent of his USERRA discrimination claim. USERRA does provide a right to reemployment following "absence . . . necessitated by reason of service in the uniformed services." 38 U.S.C. § 4312(a). But when an employee has returned to employment and is *subsequently* terminated

due to antimilitary animus, no claim exists under § 4312, even if a claim for discrimination under § 4311 might otherwise be available. *See Pittman v. Dep't of Justice*, 486 F.3d 1276, 1279–80 (Fed. Cir. 2007). Wilson does not dispute either that he returned to work after his alleged military service or that the only reemployment claim he asserted was under § 4312. He thus has not asserted an actionable reemployment claim.

Accordingly, after careful consideration, we find no error in the Board's decision.

**AFFIRMED**