**David W. GRIFFIN, Petitioner,**

v.

**DEFENSE MAPPING AGENCY, Respondent.**

**No. 86–520.**

United States Court of Appeals, Federal Circuit.

Jan. 11, 1989.

Louis Gilden, St. Louis, Mo., argued for petitioner. With him on the brief was Morah J. Ryan.

Robert A. Reutershan, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. With him on the brief were John R. Bolton, Asst. Atty. Gen. and David M. Cohen, Director. Also on the brief was Larry Olson, Asst. Gen. Counsel, Defense Mapping Agency, Aerospace Center, St. Louis, Mo., of counsel.

Before NIES, BISSELL and MAYER, Circuit Judges.

OPINION

MAYER, Circuit Judge.

This is an appeal from a decision of the Merit Systems Protection Board, 28 M.S.P. R. 506 (1985), upholding the dismissal of a non-probationary federal employee who failed to obtain the security clearance required for the position he was hired to fill. We affirm.

*Background*

David Griffin was hired by the Defense Mapping Agency (DMA) for the position of cartographer which required a top secret security clearance. While awaiting the results of the background investigation, DMA employed Griffin for nineteen months, during which time he attended a cartographer training school and was detailed to miscellaneous duties, none of

which required a security clearance. He was denied a top secret clearance because he falsified pre-employment security forms, and was therefore unable to meet that requirement of the position for which he was hired. Accordingly, he was removed from federal service as was the policy of the agency.

Griffin appealed the denial of the security clearance to the Board, which held that it had no authority to review an agency's denial of a security clearance, and upheld the removal. This principle was confirmed by the Supreme Court in *Department of the Navy v. Egan,* —— U.S. ——, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988), pending which decision this case was stayed. Accepting *Egan* as precluding the Board from reviewing the merits of a denial of a security clearance, Griffin now argues that the government was obliged to search for another position not requiring a security clearance to which he could be assigned.

## Discussion

In *Egan,* the Supreme Court faced "[t]he narrow question ... [of] whether the Merit Systems Protection Board (Board) has authority by statute to review the substance of an underlying decision to deny or revoke a security clearance in the course of reviewing an adverse action." 108 S.Ct. at 820. "In particular, may the Board, when [5 U.S.C.] § 7513 is pursued, examine the merits of the security-clearance denial, or does its authority stop short of that point, that is, upon review of the fact of denial, of the position's requirement of security clearance, and of the satisfactory provision of the requisite procedural protections?" *Id.* at 823. In answering the question presented, the Court held:

> An employee who is removed for "cause" under § 7513, when his required clearance is denied, is entitled to the several procedural protections specified in that statute. The Board then may determine whether such cause existed, whether in fact clearance was denied, and whether transfer to a nonsensitive position was feasible. Nothing in the Act, however, directs or empowers the Board to go further.

*Id.* at 825. The observation that the Board "may determine ... whether transfer to a nonsensitive position was feasible," gives rise to Griffin's appeal. He sees it as imposing a requirement on the government to search for a nonsensitive position for him. We disagree.

As can be seen, whether there is an obligation for the government to search out alternative employment for federal employees hired for positions requiring a security clearance who fail to get it was not an issue in *Egan.* Contrary to Griffin, we are not inclined to the view that the Court so casually created a new substantive requirement never thought to exist before. We see this passage as recognition of a Board role in reviewing the feasibility of transfer to a nonsensitive position if that substantive right is available from some other source, such as a statute or regulation. See, for example, *Lyles v. Department of the Army,* 864 F.2d 1581 (1989), decided today. Absent that, the Board has no authority to inquire into the feasibility of transfer to alternative positions.

■ "The case law is clear that, if ... [an] employee cannot do his job, he can be fired, and the employer is not required to assign him to alternative employment." *Carter v. Tisch,* 822 F.2d 465, 467 (4th Cir.1987). Even under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701–96 (1982), where there is a duty to reasonably accommodate handicapped employees, the employer is not required to "find another job for an employee who is not qualified for the job he or she was doing, ... [unless there are] alternative employment opportunities reasonably available under the employer's existing policies." *School Board v. Arline,* 480 U.S. 273, 289 n. 19, 107 S.Ct. 1123, 1131 n. 19, 94 L.Ed.2d 307 (1987); *see Carter v. Tisch,* 822 F.2d at 467; *Jasany v. United States Postal Service,* 755 F.2d 1244, 1250 (6th Cir.1985); *Daubert v. United States Postal Service,* 733 F.2d 1367, 1371–72 (10th Cir.1984). That means that if the Defense Mapping Agency had an "existing policy," manifested by regulation,

to transfer applicants who unsuccessfully seek a security clearance to nonsensitive positions if available, it could be held to that policy and the Board could review its efforts. In the absence of this policy, the Board has no role.*

 When one who is hired for a position fails to meet the essential requirement of that position that he secure a security clearance, not even reasonable accommodation is due. Section 7513 contains no obligation to transfer to a nonsensitive position if possible. Nor are we aware of any other statutory requirement to find a position for an employee who fails to qualify for the job he was hired to do. Griffin's termination for failure to obtain the clearance is not unfair nor unexpected, and is well within the agency's authority.

This disposition of Griffin's case is not incongruous. In *Zimmerman v. Department of the Army*, 755 F.2d 156 (Fed.Cir. 1985), we sustained the removal of a civilian technician whose appointment was contingent on maintaining her status in the active reserve. When she lost that status for failure to attend annual reserve training, the Board was limited to confirming that that was the reason for her removal. It could not look behind the fact of removal from the reserve to the precipitating reason for that removal. Nor did we see an additional requirement that she be placed in a position that did not also call for dual military and civilian status.

Once the Board was satisfied that Griffin's removal was for failure to obtain a security clearance and he had been given the procedural protections of section 7513, its inquiry was over. Investigating the possibility of transfer is not one of those procedural protections.

There is logic to this proposition. Imposing by judicial fiat a requirement that the government search for nonsensitive positions for applicants hired conditionally who fail to obtain security clearances will adversely affect both the government and potential employees. Counsel advised at oral argument that as a result of cases like this the Defense Mapping Agency now awaits the results of security clearance investigations, which often take up to a year and cost thousands of dollars, before making a hiring decision. This obviously hinders personnel procurement. It discomfits applicants who are unable to wait that long and must take another position. It wastes the money theretofore spent investigating the lost applicant and requires the agency to start over again with another applicant, adding even greater delay to staffing.

### Conclusion

Accordingly, the decision of the Board is affirmed.

AFFIRMED.

---

* Of approximately 1,800 to 1,900 cartographer positions, only about ten do not require a top secret clearance. The agency used those for long-term employees who were hired before the requirement to obtain and retain security clearances was instituted and whose clearances were subsequently suspended. All ten were encumbered when Griffin was removed. This circumstance is irrelevant to our disposition of the case, however, because Griffin was hired for a position that at all times was conditioned upon approval of a security clearance. It does not evidence an agency "policy" of reassigning employees to nonsensitive positions when they do not secure a clearance.