# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

TOM P. SAWYER,

         Appellant,

      v.

DEPARTMENT OF THE AIR FORCE,

         Agency.

DOCKET NUMBER
AT-0752-12-0249-I-2

DATE: September 8, 2015

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Joshua L. Klinger, Esquire, Denver, Colorado, for the appellant.

Gregory Lloyd, Robins Air Force Base, Georgia, for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which sustained the agency's removal action. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the judge's rulings

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

¶2      The agency removed the appellant from his GS-1102-07 Contract Specialist position, effective January 14, 2012, based on the final revocation of his security clearance and eligibility for assignment to a sensitive position. *Sawyer v. Department of the Air Force*, MSPB Docket No. AT-0752-12-0249-I-1, Initial Appeal File (I-1 IAF), Tab 5, Subtabs 4a-4b.

¶3      The appellant filed an appeal with the Board regarding his removal. I-1 IAF, Tab 1. He asserted that: (1) his position did not require a security clearance or eligibility for assignment to sensitive duties; (2) the agency was required to reassign him to a nonsensitive position, rather than remove him; and (3) the agency failed to afford him an opportunity to reply to its proposal notice, which constituted harmful error and a due process violation. I-1 IAF, Tabs 1, 15. He requested a hearing. I-1 IAF, Tab 1 at 2.

¶4      After holding the requested hearing, the administrative judge issued an initial decision affirming the agency's removal action. *Sawyer v. Department of the Air Force*, MSPB Docket No. AT-0752-12-0249-I-2, Initial Appeal File, Tab 8, Initial Decision (ID). He found that: (1) the agency failed to prove that the appellant's position required a security clearance, but established that it had designated his position as noncritical sensitive; (2) there was no formal agency

policy requiring that the appellant be reassigned; and (3) there was no evidence of harmful error or a due process violation because the agency afforded the appellant an opportunity to reply to the proposed removal action.  ID.

¶5        The appellant has filed a petition for review, to which the agency responded.  *Sawyer v. Department of the Air Force*, MSPB Docket No. AT-0752-12-0249-I-2, Petition for Review (PFR) File, Tabs 3, 5.  He again asserts that:  (1) his position did not require eligibility for assignment to sensitive duties;[2] (2) the agency was required to transfer him to a nonsensitive position; and (3) the agency violated his due process rights and committed a harmful error by depriving him of an opportunity to respond to the proposal notice.  PFR File, Tab 3.  For the reasons set forth below, we affirm the initial decision.

The agency designated the appellant's position as sensitive.

¶6        The appellant asserts that his position did not require eligibility for assignment to sensitive duties because neither the vacancy announcement, nor a condition of employment form he signed, nor the position description in effect at the time of his appointment documented such a requirement.[3]  *Id.* at 12-13.  These facts do not appear to be in dispute; however, there also is no dispute that the

_____

[2] He also argues that his position did not require a security clearance.  PFR File, Tab 3 at 12-13.  However, the administrative judge already found that the agency failed to prove that his position required a security clearance.  ID at 6-7.  Moreover, the agency's removal decision was based on the final revocation of his eligibility for access to classified information or assignment to sensitive duties, so whether his position required a security clearance is not dispositive.  I-1 IAF, Tab 5, Subtab 4b.

[3] The appellant further notes that:  (1) his position did not require access to secret or top secret information; and (2) he could not have accessed such information because his work area was not secure, as evidenced by the fact that doors were left unlocked and "contracts and information" were stored on desks and in unlocked cabinets.  PFR File, Tab 3 at 13.  We cannot consider these arguments, however, because we do not have authority to examine the validity of an agency's decision to designate a position as sensitive.  *See Kaplan v. Conyers*, 733 F.3d 1148, 1160 (Fed. Cir. 2013), *cert. denied sub nom. Northover v. Archuleta*, 134 S. Ct. 1759 (2014); *see also West v. Department of the Navy*, 63 M.S.P.R. 86, 88-89 (1994) (holding that the Board can determine whether an agency established a security clearance requirement for a position, but lacks authority to review an agency's reasons for imposing a security clearance requirement).

agency changed the sensitivity designation of the appellant's position before proposing his removal. The agency submitted a form generated through the website of the Office of Personnel Management (OPM) and signed by the Chief of the agency's Resource Management Division, indicating that the position was designated as noncritical sensitive at least as of July 14, 2011.[4] I-1 IAF, Tab 10, Exhibit (Ex.) 10. The agency also submitted a Core Personnel Document (CPD) indicating that the position was designated as noncritical sensitive. I-1 IAF, Tab 9, Ex. 5.[5] Moreover, although the appellant disputes exactly when the agency designated his position as sensitive, he concedes that the agency did so before proposing his removal. PFR File, Tab 3 at 12 n.6. Based on the foregoing, we discern no basis to disturb the administrative judge's finding that the agency proved by preponderant evidence that it designated the appellant's position as noncritical sensitive. *See* ID at 7-9.

The agency was not required to reassign the appellant to a nonsensitive position.

¶7    If a statute, agency policy, or regulation exists that creates a substantive right for an employee to be reassigned to a nonsensitive position following a determination that he is ineligible to occupy a sensitive position, then the Board may review the feasibility of such a transfer. *Griffin v. Defense Mapping*

---

[4] An agency management analyst testified that in the spring or summer of 2011, OPM began requiring this form to accompany each Core Personnel Document (CPD). Hearing Compact Disc (HCD), Track 1.

[5] The record contains conflicting copies of the CPD for the appellant's position; one copy reflects that the position was designated as nonsensitive, whereas the other indicates that the position was designated as noncritical sensitive. I-1 IAF, Tab 9, Exs. 5-6. An agency management analyst testified that in the summer or fall of 2010, agency management determined that all positions in the 1102 series would be designated as noncritical sensitive. HCD, Track 1. He further explained that the CPD was not changed until sometime in 2011 because the agency was awaiting the results of union bargaining with management regarding the implementation of a drug-testing requirement. *Id.* This testimony is consistent with the copy of the CPD that indicates that the position was designated as noncritical sensitive and also that the position was subject to a drug testing requirement as of September 2011. I-1 IAF, Tab 9, Ex. 5. We thus find it proper to rely on the copy of the CPD in the record indicating that the position was designated as noncritical sensitive.

*Agency*, [864 F.2d 1579](#), 1580-81 (Fed. Cir. 1989). The appellant was appointed to the position he occupied at the time of his removal under the Federal Career Intern Program (FCIP) in the excepted service. I-1 IAF, Tab 9, Ex. 3. He contends that, pursuant to the regulations governing the FCIP, the agency was required to return him to his previous position if he did not meet the requirements of the position to which he was appointed under the FCIP. PFR File, Tab 3 at 15-16. Specifically, the provision he cites indicates that an employee who held a career or career-conditional appointment in an Executive agency before entering the FCIP in the same agency, and who fails to complete the FCIP for reasons unrelated to misconduct or suitability, shall be placed in a career or career-conditional position in the current agency at no lower grade or pay than the one he left to accept the position in the FCIP. [5 C.F.R. § 213.3202](#)(o)(6)(ii) (2011). He notes that the agency also advised him of this information in the Standard Form 50 documenting his appointment, as well as in an agency document he signed before his appointment, which informed him of the conditions of his employment under the FCIP. PFR File, Tab 3 at 15-16; *see* I-1 IAF, Tab 9, Exs. 2-3.

¶8        We disagree with the appellant. As he acknowledges, the FCIP was abolished effective March 1, 2011. Recruiting and Hiring Recent Graduates, Exec. Order No. 13,162, 75 Fed. Reg. 82,585, 82,588 (Dec. 30, 2010); *see* PFR File, Tab 3 at 16. Thus, at the time of the appellant's January 2012 removal, the regulations upon which he now relies did not exist and did not govern the agency's actions. Indeed, the appellant did not hold an FCIP appointment at the time of his removal because the agency had converted him to the competitive service, effective March 1, 2011. I-1 IAF, Tab 11 at 16.

¶9        Notwithstanding, the appellant asserts that the agency was bound to apply this regulation because he relied upon it in deciding to accept an appointment under the FCIP. PFR File, Tab 3 at 15. We again disagree. The Federal Government may not be estopped on the same terms as any other litigant; rather,

our reviewing court has held that, to the extent that equitable estoppel is available against the Federal Government, some form of affirmative misconduct must be shown in addition to the traditional requirements of estoppel. *Perez Peraza v. Office of Personnel Management*, 114 M.S.P.R. 457, ¶ 9 (2010) (citing *Zacharin v. United States*, 213 F.3d 1366, 1371 (Fed. Cir. 2000)).  There is no evidence of affirmative misconduct by the agency here.  The agency in this appeal was not responsible for promulgating the FCIP regulations; rather, they were promulgated by OPM, which is not a party to this appeal, at the order of the President. *See* Federal Career Intern Program, Exec. Order. No. 13,162, 65 Fed. Reg. 43,211, 43,212 (July 6, 2000).  That the agency provided the appellant with information consistent with those regulations as they existed at the time, although no longer true when he was removed because the regulations had been revoked by then, does not constitute affirmative misconduct.[6] *Cf. Nunes v. Office of Personnel Management*, 111 M.S.P.R. 221, ¶ 19 (2009) (determining that the unintentional, negligent provision of misinformation does not constitute affirmative misconduct).

The agency did not violate the appellant's due process rights or commit a harmful procedural error.[7]

¶10    The agency proposed the appellant's removal on December 9, 2011.[8]  I-1 IAF, Tab 5, Subtab 4d.  The removal notice afforded the appellant 20 days from

[6] Leaving aside the appellant's argument concerning the FCIP, the administrative judge found in the initial decision that there was no evidence of any other formal policy requiring the agency to reassign the appellant.  ID at 9-10.  The appellant does not challenge this finding on review and we discern no basis to disturb it.

[7] The agency does not dispute, and we discern no basis to disturb, the administrative judge's finding that the appellant met the definition of an employee under 5 U.S.C. § 7511(a)(1)(A) at the time of his removal. *See* ID at 1; *see also* I-1 IAF, Tab 11 at 16.  Thus, the appellant had a property interest in his continued employment and was entitled to due process before the agency effected his removal. *See Brown v. Department of Defense*, 121 M.S.P.R. 584, ¶ 12 (2014).

[8] The agency initially proposed the appellant's removal on November 9, 2011, but subsequently issued an amended proposal notice.  I-1 IAF, Tab 5, Subtabs 4d, 4f.

his receipt of the notice to reply orally and/or in writing. *Id.* Presuming 5 days for receipt by mail, the agency calculated the appellant's reply deadline to be January 3, 2012.[9] Hearing Compact Disc (HCD), Track 4 (the deciding official's testimony).

¶11    On December 27, 2011, the appellant's representative advised the deciding official that the appellant wished to provide a reply. I-1 IAF, Tab 9 at 27. The deciding official suggested that the appellant reply on December 28, 2011. *Id.* at 26. The appellant's representative did not confirm if December 28, 2011, would be an acceptable possible alternate deadline, and so the deciding official emailed him on that date suggesting December 30, 2011, instead. *Id.* The appellant's representative responded on December 30, 2011, asking if the reply could be scheduled for the week of January 9, 2012. *Id.* at 25. The deciding official answered, also on December 30, 2011, that he would "not agree to extending [the appellant's] reply time," and instructed the appellant's representative to advise him if he "still wish[ed] to meet the week of 9 Jan." *Id.*; *see* I-1 IAF, Tab 5, Subtab 4c at 1. The appellant's representative responded on January 4, 2012, stating that he understood the deciding official's answer to mean that he would not extend the deadline to make a final decision, but he still would allow a reply. I-1 IAF, Tab 9 at 25. The appellant's representative confirmed that he would like the reply to be scheduled for the week of January 9, 2012. *Id.*

---

[9] It is unclear exactly when the appellant received the amended proposal notice. However, there is evidence that the agency delivered the notice to the base post office for mailing on December 9, 2011. I-1 IAF, Tab 5, Subtab 4d at 1. The appellant has not disputed the administrative judge's finding in the initial decision that he neither identified the exact date he received the agency's proposal notice nor proved that he did not receive the notice within 5 days of December 9, 2011. *See* ID at 16; *Rios v. Nicolson*, 490 F.3d 928, 930-31 (Fed. Cir. 2007) (applying the common law mailbox rule, an agency creates an "inference of fact" when it shows that it delivered a properly directed letter to the post office, thereby presumptively proving that the appellant received the letter; an appellant fails to rebut that presumption if he does not offer any opposing evidence or explicitly claim that he did not receive the letter or that the address on the letter was incorrect (quoting *Rosenthal v. Walker*, 111 U.S. 185, 193-94 (1884)).

Later that same day, however, the deciding official responded that he had "reconsidered [his] invitation to meet during the week of 9 Jan" and no longer believed such a meeting would be beneficial; the appellant's time period to reply already expired on January 3, 2012; and he anticipated issuing a final decision on the proposed removal by January 13, 2012. *Id.* at 24; *see* I-1 IAF, Tab 5, Subtab 4c at 1.

¶12 The appellant contends that the agency violated his due process rights and committed a harmful procedural error because the deciding official granted him an extension to reply until the week of January 9, 2012, but subsequently withdrew that approval without sufficient notice. PFR File, Tab 3 at 9-12. We disagree. The proposal notice indicated that the deciding official would "consider" extending the reply deadline, if an extension request was submitted with supporting reasons, suggesting that the grant of an extension was not automatic, but was instead committed to the deciding official's discretion. I-1 IAF, Tab 5, Subtab 4d at 2. When the appellant's representative requested an extension until the week of January 9, 2012, the deciding official unequivocally rejected that request when he responded that he would "not agree to extending [the appellant's] reply time." I-1 IAF, Tab 9 at 25. Notwithstanding this rejection, neither the appellant nor his representative took any action to make a reply before the deadline expired. We find it insignificant that the deciding official also advised the appellant's representative, in the December 30, 2011 email communication, to let him know if the appellant still wished to schedule a meeting for the week of January 9, 2012. To the extent that the appellant's representative was confused about the meaning of the deciding official's statement, he was clearly dilatory in pursuing the appellant's interests because he waited until January 4, 2012, after the expiration of the reply deadline, to seek clarification and verify that his interpretation was correct. *See id.*

¶13 The deciding official, moreover, did not err in denying the appellant's extension request. The appellant was first notified in mid-November 2011, of the

agency's proposal to remove him and afforded 20 days to respond. I-1 IAF, Tab 5, Subtab 4f. The agency subsequently issued an amended proposal notice in December 2011, affording the appellant an additional 20 days to respond. I-1 IAF, Tab 5, Subtab 4d. The appellant's only proffered reason for the extension request was based on scheduling difficulties due to the holiday season. *See* I-1 IAF, Tab 9 at 24; *see also* PFR File, Tab 3 at 12. We therefore discern no error in the deciding official's decision to deny the request; the appellant did not present a compelling need for an extension, particularly in light of the fact that he had been on notice of the basis for the proposed action since November 2011, before the holiday season began, and he was given a more than reasonable amount of time to prepare a reply, *see* 5 U.S.C. § 7513(b)(2).

¶14    Finally, as to the appellant's harmful error claim, we find that he has failed to satisfy his burden to establish that the agency committed an error that is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. *See* 5 C.F.R. § 1201.4(r). He has not identified any information he would have presented in a reply that might have caused the deciding official to reach a different decision, *see Kinsey v. Department of the Navy*, 59 M.S.P.R. 226, 230 (1993), and it is unlikely that he could have presented such information because the deciding official only would have limited discretion concerning the revocation of his eligibility to occupy a sensitive position, *see Robinson v. Department of Homeland Security*, 498 F.3d 1361, 1365 (Fed. Cir. 2007).

**NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS**

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed.  *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right.  It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm.  Additional information is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the United States Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Merit Systems Protection Board neither endorses the services

provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:          _____
                                  William D. Spencer
                                  Clerk of the Board

Washington, D.C.