# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| DANA O'QUINN, | DOCKET NUMBERS |
| Appellant, | AT-0752-18-0001-I-1 |
| | AT-1221-22-0478-W-1 |
| v. | |
| DEPARTMENT OF HOMELAND SECURITY, | DATE: January 30, 2025 |
| Agency. | |

## THIS ORDER IS NONPRECEDENTIAL[1]

Dana O'Quinn, Folkston, Georgia, pro se.

Stephanie M. Lewis, Glynco, Georgia, for the agency.

### BEFORE

Cathy A. Harris, Chairman*
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member**

*The Board members voted on this decision before January 20, 2025.
**Member Kerner recused himself and
did not participate in the adjudication of this appeal.

### REMAND ORDER

The appellant has filed a petition for review of the initial decision in

*O'Quinn v. Department of Homeland Security*, MSPB Docket No. AT-0752-18-

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

0001-I-1 (*O'Quinn I*), which sustained her indefinite suspension, and a petition for review of the initial decision in *O'Quinn v. Department of Homeland Security*, MSPB Docket No. AT-1221-22-0478-W-1 (*O'Quinn II*), which dismissed her individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT both petitions, JOIN the appeals, VACATE both initial decisions, and REMAND the joined appeal to the regional office for further adjudication in accordance with this Remand Order.[2]

## BACKGROUND

Events leading to the appellant's indefinite suspension

The appellant occupies the position of Chief, Protocol and Communications Office (PCO), GS-0301-15, in the Director's Office of the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. *O'Quinn v. Department of Homeland Security*, MSPB Docket No. AT-0752-18-0001-I-1, Initial Appeal File (0001 IAF), Tab 1 at 1. The position description for the PCO Chief position comprises a cover sheet, known as the Optional Form (OF) 8, and a narrative portion. 0001 IAF, Tab 20 at 9, 12-23. Box 24 of the OF-8 includes a remark, in a font noticeably different from that used elsewhere on the form,

---

[2] Following the close of the record on review, the appellant filed a motion requesting leave to file an additional pleading in *O'Quinn I*. The Board's regulations did not provide for pleadings other than a petition for review, a cross petition for review, and a reply to a response to a petition for review. 5 C.F.R. § 1201.114(a)(5) (2022). For the Board to consider a pleading other than one of those set forth above, the party must have described the nature of and need for the pleading. 5 C.F.R. § 1201.114(a)(5) (2022). If a party wished to submit a pleading after the record has closed, the party must also have shown that the evidence was not readily available before the record closed. 5 C.F.R. § 1201.114(a)(5), (k) (2022). The appellant asserts that she has obtained "additional exculpatory information/evidence not available before April 25, 2022," but she has not described the nature of the evidence or explained why it was not available before that date. In the absence of any further details, we DENY her motion. However, this ruling does not preclude the appellant from submitting additional evidence on remand in accordance with the Board's regulations and the administrative judge's instructions.

indicating "Top Secret Clearance." *Id*. at 12. The narrative portion contains no reference to classified information or a clearance requirement. *Id*. at 14-23.

On February 21, 2017, the appellant filed a complaint with the Office of Special Counsel (OSC). *O'Quinn v. Department of Homeland Security*, MSPB Docket No. AT-1221-22-0478-W-1, Initial Appeal File (0478 IAF), Tab 11 at 146-64. In her complaint, she alleged that the agency had retaliated against her for various whistleblowing disclosures and activities, including reporting unfair hiring practices at FLETC, providing a statement during an investigation by the Office of Inspector General, and reporting that agency officials were soliciting and approving organizations to hold conferences at FLETC. *Id*. at 149-50. She identified various retaliatory actions including placing her under investigation; moving her out of her position (twice); placing a hold on her clearance; creating a hostile work environment; instructing her to sign a nondisclosure agreement that did not include the language required under 5 U.S.C. § 2302(b)(13); and failing to provide performance standards, a mid-year review, or a rating for FY 2016. *Id*. On April 14, 2017, OSC informed the appellant of its determination that further investigation was warranted into her allegations for possible violations of 5 U.S.C. § 2302(b)(8), (9), and (13). *Id*. at 145.

By letter dated July 19, 2017, the agency's Office of the Chief Security Officer notified the appellant that it was suspending her eligibility for access to classified information, i.e., her security clearance.[3] 0001 IAF, Tab 4 at 56-58. The following day, D.A., then Acting Chief of Staff, proposed to indefinitely suspend the appellant based on the suspension of her security clearance, stating that it was a condition of her employment. *Id*. at 54-55. The appellant provided the agency a written response in which she argued, among other things, that her position did not require access to classified information. *Id*. at 22-49. It appears that at some point in July 2017, the appellant amended her pending OSC

_____

[3] At times the letter refers simply to "access to classified information," but it is apparent from context that this was intended as shorthand for eligibility for access.

complaint to include the proposed indefinite suspension. *See O'Quinn v. Department of Homeland Security*, MSPB Docket No. AT-1221-22-0478-W-1, Petition for Review (0478 PFR) File, Tab 1 at 7.[4]

By letter dated August 31, 2017, D.A. notified the appellant of his decision to indefinitely suspend her pending final adjudication of her eligibility for access to classified information. 0001 IAF, Tab 4 at 19-21. In the notice of appeal rights, under the subheading "Whistleblower Retaliation," the letter explained that if the appellant wished to allege that the action was being taken against her in reprisal for whistleblowing activity, she could elect one of the following remedies: (a) filing an appeal with the Board under 5 U.S.C. § 7701; or (b) filing a complaint with OSC under 5 U.S.C. § 1214, potentially to be followed by an IRA appeal under 5 U.S.C. § 1221. 0001 IAF, Tab 4 at 21. Under the same subheading, the notice stated that an election would be "deemed to have been made based upon which of the three [sic] actions is filed first," but the notice did not explicitly state that the remedies for alleged whistleblowing reprisal were mutually exclusive. *Id*.

The appellant's indefinite suspension began September 1, 2017. *Id*. at 18. As discussed further below, it is unclear from the record whether the appellant subsequently amended her OSC complaint to include the effected action, or on what date she may have done so.

O'Quinn I

On September 28, 2017, the appellant filed an appeal with the Board challenging her indefinite suspension. 0001 IAF, Tab 1. She requested a hearing and contended that her indefinite suspension was improper on the grounds that:

---

[4] The available correspondence between the appellant and OSC does not explicitly refer to a notice of proposed indefinite suspension. However, OSC's preliminary determination letter includes the following statement: "In July 2017, you informed OSC that FLETC had indefinitely suspended you." *Id*. As of the end of July 2017, the agency had not yet made a final decision to indefinitely suspend the appellant, so we infer that she amended her complaint to include the proposed action.

(1) the PCO Chief position did not require access to classified information; (2) she was eligible for reassignment to another position that also did not require classified information; and (3) the action was the result of sex discrimination and reprisal for protected equal employment opportunity and whistleblowing activity. *Id.* at 6.

During the discovery phase, the appellant challenged the veracity of the clearance designation on the OF-8 and, citing *Gamboa v. Department of the Air Force*, 120 M.S.P.R. 594 (2014), sought to compel discovery concerning the question of whether the PCO Chief position in fact required a clearance or access to classified information. 0001 IAF, Tab 16 at 5-12. The administrative judge denied the appellant's request for discovery on that issue, reasoning that *Gamboa* was inapposite because the position description "clearly contains the words 'Top Secret Clearance.'" 0001 IAF, Tab 21 at 2-3. In the same order, the administrative judge also granted the agency's motion to dismiss the appellant's affirmative defenses, reasoning that the Board lacked authority to adjudicate such defenses in an appeal of an adverse action based on the suspension of a security clearance. *Id.* at 3-4. In response, the appellant withdrew her hearing request, explaining that the administrative judge's rulings had "constrained [her] ability to present her claims." 0001 IAF, Tab 24 at 5.

On June 18, 2018, the administrative judge issued an initial decision sustaining the indefinite suspension. 0001 IAF, Tab 30, Initial Decision (0001 ID). He first found that, contrary to the appellant's assertions, her position did in fact require a security clearance. 0001 ID at 6-10. In reaching that conclusion, he reasoned that the designation on the OF-8 was "very strong, if not dispositive evidence," and that it was "unnecessary to give significant weight to evidence outside the position description itself." 0001 ID at 6. The administrative judge further found that the appellant's clearance was suspended; that the agency complied with the procedural requirements of 5 U.S.C. § 7513; that the appellant failed to establish the existence of a statute, regulation, or

agency policy requiring her reassignment to a position not requiring a clearance; and that the indefinite suspension had a valid condition subsequent. 0001 ID at 10-12. Finally, he reiterated his previous ruling that the Board lacked jurisdiction over the appellant's affirmative defenses. 0001 ID at 12.

On August 19, 2018, the appellant filed a petition for review, in which she again challenged the veracity of the clearance designation on the OF-8 and argued that the administrative judge improperly excluded evidence on that issue. *O'Quinn v. Department of Homeland Security*, MSPB Docket No. AT-0752-18-0001-I-1, Petition for Review (0001 PFR) File, Tab 3 at 4-16. She further contended that the administrative judge erred in dismissing her affirmative defenses. *Id*. at 6. In support of her petition, she provided various documents, including a new declaration by K.L., former FLETC Chief of Staff.[5] *Id*. at 19-21. The agency filed a response, to which the appellant replied. 0001 PFR File, Tabs 5, 7. The appellant's petition for review in *O'Quinn I* has since remained pending before the Board.

Closure of OSC investigation

Meanwhile, on March 8, 2022, OSC issued the appellant a letter stating its preliminary findings on her complaint. 0478 PFR File, Tab 1 at 7-8. In the letter, OSC related that when the appellant originally filed her complaint, she alleged that the agency had placed her on a detail in retaliation for several disclosures, including allegations of prohibited personnel practices made in February 2016 on behalf of a terminated employee and violations of 18 U.S.C. § 205 in connection with multiple conferences. *Id*. at 7. The letter further stated: "In July 2017 [sic], you informed OSC that FLETC had indefinitely suspended you, and we began to evaluate that allegation." *Id*. OSC noted that the appellant had since filed a Board appeal of her indefinite suspension (i.e., *O'Quinn I*), in which she argued

---

[5] We accept the appellant's explanation that the K.L. declaration was unavailable before the close of the record despite her due diligence. 0001 PFR File, Tab 3 at 4; s*ee* 5 C.F.R. § 1201.115(d).

that her position did not require a security clearance and that the appeal was then pending before the Board. *Id*. OSC explained that, under *Department of the Navy v. Egan*, 484 U.S. 518 (1988), it was prevented from reviewing any personnel action that occurred because of an agency decision on a security clearance and that the preliminary legal issue OSC would need to address, i.e., whether the appellant's position in fact required a security clearance, was already before the Board. 0478 PFR File, Tab 1 at 7. Thus, OSC explained, it could not obtain any corrective action for the appellant at that point, and any action on the preliminary legal question would be duplicative of the current Board proceeding. *Id*. at 8. OSC further noted that its authority to consider the appellant's retaliation claims was unclear and concluded that it would decline to make any determination on the merits of those claims. *Id*.

By letter dated April 25, 2022, OSC notified the appellant that it had terminated its investigation into her complaint and informed her of her IRA appeal rights. 0478 IAF, Tab 1 at 15. The letter stated that the appellant had alleged that in retaliation for her February 2016 disclosures on behalf of a terminated employee about prohibited disclosures, and her subsequent disclosures concerning violations of 18 U.S.C. § 205, the agency "suspended [her] indefinitely in July 2017 [sic] based on the erroneous belief that [her] position required a clearance." *Id*. Unlike the preliminary determination letter, the closure letter neither explained the basis for OSC's decision to terminate the investigation, nor referred to any of the other alleged retaliatory actions the appellant had raised in her complaint. *Id*.

O'Quinn II

On June 29, 2022, the appellant filed an IRA appeal seeking corrective action for the ongoing indefinite suspension and various other alleged retaliatory actions, including involuntary directed reassignments, failure to provide annual performance plans from 2016 through 2021, and placement in hostile work environments. 0478 IAF, Tab 1 at 4-5. She requested a hearing and specifically

asked that the IRA appeal not be assigned to the administrative judge who had handled *O'Quinn I*. *Id*. at 2, 4. She alleged that OSC had told her that the administrative judge in *O'Quinn I* should not have taken jurisdiction in that case and that his decision should be withdrawn. *Id*. at 4. She further alleged that the agency had committed additional prohibited personnel practices, including retaliation for EEO activity, and had denied her due process. *Id*. at 5.

The IRA appeal was assigned to a second administrative judge, who advised the appellant of her burden of proof on jurisdiction and the merits of her appeal. 0478 IAF, Tab 3. In response, the appellant provided copies of her original OSC complaint and other correspondence with OSC. 0478 IAF, Tab 11.

Without holding the appellant's requested hearing, the administrative judge dismissed the appeal for lack of jurisdiction in a July 29, 2022 initial decision. 0478 IAF, Tab 17, Initial Decision. Relying exclusively on OSC's closure letter, while ignoring the appellant's original complaint and other correspondence with OSC, the administrative judge found that the appellant had exhausted her remedies with OSC only with regard to the indefinite suspension. *Id*. at 3. The administrative judge further found that the appellant had apparently elected to contest her indefinite suspension with OSC before filing with the Board. *Id*. at 4. In making that finding, the administrative judge seems to have relied on the fact that the appellant filed her original OSC complaint in February 2017, which was months before the indefinite suspension was even proposed. *Id*. The administrative judge went on to find that, regardless of which action was filed first, the Board lacked IRA jurisdiction over the indefinite suspension. *Id*. at 4-5. In reaching that conclusion, the administrative judge cited *Roach v. Department of the Army*, 82 M.S.P.R. 464 (1999), for the broad proposition that the Board lacks IRA jurisdiction over retaliation claims "involving" the denial or suspension of a security clearance.[6] 0478 ID at 4. Finally, the administrative

_____

[6] The Board held in *Roach* that a security clearance determination is not a personnel action under 5 U.S.C. § 2302(a)(2)(A) and cannot *itself* be reviewed in an IRA appeal.

judge noted that the Board lacked jurisdiction to consider EEO retaliation claims in an IRA appeal and that it was unnecessary to address whether the appeal might be precluded by res judicata or collateral estoppel. 0478 ID at 5.

The appellant filed a petition for review, in which she argues, among other things, that the administrative judge erred in finding that she had exhausted her remedies with OSC only with regard to the indefinite suspension. 0478 PFR, Tab 1. The agency filed a response to the appellant's petition. 0478 PFR, Tab 3.

## ANALYSIS

<u>We cannot determine based on the existing record whether the appellant is bound by the election of remedies provisions of 5 U.S.C. § 7121(g) or, if so, whether she made a binding election to challenge her indefinite suspension before OSC before filing her first Board appeal.</u>

Under 5 U.S.C. § 7121(g), an "employee" who claims to have suffered an adverse action in retaliation for whistleblowing may elect no more than one of the following remedies: (1) a direct appeal to the Board under 5 U.S.C. § 7701; (2) a negotiated grievance procedure under 5 U.S.C. § 7121, if applicable;[7] or (3) a request for corrective action under 5 U.S.C. chapter 12, subchapters II and III, i.e., an OSC complaint, potentially to be followed by an IRA appeal. Ordinarily, an individual who first requests corrective action from OSC will be deemed to have made a binding election to proceed in that forum. 5 U.S.C. § 7121(g)(4)(C). In such a case, the jurisdictional requirements for an IRA appeal apply, even if the contested personnel action would have been directly appealable to the Board. *See Agoranos v. Department of Justice*, 119 M.S.P.R. 498, ¶ 14 (2013). However, an election under 5 U.S.C. § 7121(g) is binding only if made knowingly and voluntarily. *Id.*, ¶ 16.

---

*Roach*, 82 M.S.P.R. 464, ¶ 53.

[7] In this case, the appellant was not covered by a collective bargaining agreement. 0001 IAF, Tab 4 at 10.

For purposes of chapter 71, the term "employee" includes "an individual employed in an agency" but not "a supervisor or a management official." 5 U.S.C. § 7103(a)(2); *see* 5 U.S.C. § 7103(a)(10)-(11) (defining supervisor and management official). Accordingly, the Board has held that supervisors and management officials are not bound by the election of remedies provisions of 5 U.S.C. § 7121(g). *Requena v. Department of Homeland Security*, 2022 MSPB 39, ¶ 11. Here, the record suggests that the appellant may have been a "supervisor," as defined by 5 U.S.C. § 7103(a)(10), rather than an "employee," as defined by 5 U.S.C. § 7103(a)(2). If that is so, then the appellant is not covered under 5 U.S.C. § 7121(g). However, the nature of the appellant's position as it relates to this statutory scheme was not argued below or on review.

Moreover, assuming the appellant is covered by 5 U.S.C. § 7121(g), the record contains conflicting evidence as to whether she made a binding election to contest her indefinite suspension through an OSC complaint before filing her Board appeal. OSC's preliminary determination and closure letters imply that the appellant was indefinitely suspended in July 2017, and amended her pending complaint that same month to allege that the action was the result of whistleblowing reprisal. 0478 IAF, Tab 1 at 15; 0478 PFR File, Tab 1 at 7-8. However, while the agency issued a proposal to indefinitely suspend the appellant on July 20, 2017, it did not make a final decision on the proposed action until August 31, 2017, and the indefinite suspension did not begin until September 1, 2017. 0001 IAF, Tab 4 at 18-21, 54-55. Given this discrepancy, it is unclear from the record whether the appellant in fact amended her OSC complaint to include the effected indefinite suspension, as opposed to the proposal notice. It is also unclear whether, if the appellant did amend her OSC complaint to include the effected action, she did so before filing her Board appeal on September 28, 2017, or whether such an election would have been binding.

In order to determine the scope of the Board's jurisdiction in these appeals, it is necessary to remand for further development of the record. On remand, the

administrative judge should first determine whether the appellant is an "employee" subject to the election of remedies provisions of 5 U.S.C. § 7121(g). If the administrative judge finds that the appellant is covered by 5 U.S.C. § 7121(g), he should next determine whether the appellant made a binding election to challenge her indefinite suspension through OSC before filing directly with the Board. In the event the record indicates that the appellant has not yet made a binding election of remedies, i.e., one that was both knowing and informed,[8] the administrative judge should provide the appellant an opportunity to choose whether to continue challenging her indefinite suspension through her pending adverse action appeal, i.e., *O'Quinn I*, or through the procedures set forth in 5 U.S.C. chapter 12, subchapters II and III.[9] After resolving the election issue, the administrative judge should further adjudicate the appeals as follows.

AT-0752-18-0001-I-1 (*O'Quinn I*)

If the administrative judge determines that (1) the appellant is subject to the election of remedies provisions of 5 U.S.C. § 7121(g), and (2) either the appellant made a binding election to challenge the effected indefinite suspension before OSC prior to filing her September 28, 2017 appeal in *O'Quinn I* or the appellant did not previously make a binding election of remedies but indicates that she now prefers to challenge the indefinite suspension through an IRA appeal, the administrative judge should dismiss *O'Quinn I* for lack of jurisdiction. Otherwise, the administrative judge should reconsider the merits of the agency's action and issue a new decision consistent with the analysis below.

---

[8] Should the administrative judge reach the question of whether the appellant previously made a binding election of remedies, he should bear in mind the Board's decision in *Kaszowski v. Department of the Air Force*, 2023 MSPB 15, ¶ 7 (finding that the appellant's election to challenge her removal through the negotiated grievance procedures was not binding where the agency did not specifically notify her that electing to file a grievance would result in a waiver of her Board appeal rights).

[9] Depending on whether the appellant previously exhausted her remedies with OSC concerning the effected indefinite suspension, the latter option could involve either further adjudication in her pending IRA appeal (*O'Quinn II*) or a new OSC complaint.

In an appeal of an adverse action based on the denial, revocation, or suspension of a security clearance, the Board does not have the authority to review the substance of the underlying security clearance determination but may review: (1) whether the employee's position required a security clearance; (2) whether the security clearance was denied, revoked, or suspended; and (3) whether the agency followed the procedures set forth in 5 U.S.C. § 7513. *Egan*, 484 U.S. at 530-31 (1988); *Hesse v. Department of State*, 217 F.3d 1372, 1376 (Fed. Cir. 2000); *Gamboa*, 120 M.S.P.R. 594, ¶ 5. With limited exceptions, the Board's review is confined to these issues.[10]

With respect to issue (1), the Board does not have authority to review an agency's reasons for imposing a security clearance requirement. *Gamboa*, 120 M.S.P.R. 594, ¶ 5. The Board must, however, determine whether a security clearance was, in fact, a requirement for the appellant's position. *Id*. If the agency fails to meet its burden of proving by preponderant evidence that the

---

[10] In an appropriate case, the Board may also review whether it was feasible to reassign the appellant to a position not requiring the withheld security credential. *Egan*, 484 U.S. at 530-31. However, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has clarified that *Egan* does not create a substantive entitlement to reassignment, and that the Board's authority to review whether reassignment was feasible arises only when a substantive right to reassignment is available from some other source, such as a statute, regulation, or agency policy. *Griffin v. Defense Mapping Agency*, 864 F.2d 1579, 1580 (Fed. Cir. 1989). The administrative judge found below that the appellant did not establish the existence of such a statute, regulation, or policy, 0001 ID at 10-11, and the appellant does not contest that finding on review. The Federal Circuit has also held that, pursuant to 5 U.S.C. § 7701(C)(2)(A), the Board may review whether an agency committed harmful procedural error in taking an adverse action based on a security clearance determination. *Romero v. Department of Defense*, 527 F.3d 1324, 1328 (Fed. Cir. 2008). In addition, while a security clearance determination does not by itself implicate any due process concerns, the Board may review whether the agency provided due process in taking the resulting adverse action. *Buelna v. Department of Homeland Security*, 121 M.S.P.R. 262, ¶ 15 (2014). The Board has also held open the possibility of other viable affirmative defenses that would not require the Board to review the substance of the underlying security clearance determination, e.g., a discrimination defense that solely goes to the issue of penalty and is based on the agency's treatment of similarly situated individuals outside of the appellant's protected class. *See Helms v. Department of the Army*, 114 M.S.P.R. 447, ¶ 9 n.* (2010).

appellant's position required a security clearance, the Board will not sustain an adverse action based on a negative clearance determination. *See id.*, ¶ 11.

The facts of this case differ somewhat from those in *Gamboa*, where the position description was entirely silent as to the requirement for a security clearance. *See id.*, ¶ 6. Here, by contrast, the OF-8 indicates that a Top Secret clearance was a requirement for the PCO Chief position. We find, however, that the OF-8 is not dispositive evidence of a clearance requirement, and that it is necessary to consider the appellant's claim that the clearance designation on the form was inauthentic or the result of ministerial error.[11] *Cf. Grigsby v. Department of Commerce*, 729 F.2d 772, 775-76 (Fed. Cir. 1984) (finding that the Government was not barred from demonstrating "ministerial error" in the execution of the appellant's Standard Form 50 and/or 52, and that "[n]either form is conclusive in face of error in its execution"); *Fox v. Department of the Army*, 120 M.S.P.R. 529, ¶ 22 (2014) ("While an executed SF-50 is the customary documentation for a personnel action, it does not constitute the personnel action itself and does not on its face control an employee's status and rights."). Under these circumstances, it was error to deny the appellant's effort to obtain and present evidence in support of her challenge to the authenticity of the clearance designation. *See West v. Department of the Navy*, 63 M.S.P.R. 86, 89 (1994) (finding that the administrative judge erred in excluding testimony proffered by the appellant on the issue of whether his position required a security clearance).

The current record contains conflicting evidence as to whether the remark in Box 24 of the OF-8 accurately reflects a security clearance requirement for the PCO Chief position. The OF-8 bears the signatures of three individuals: K.L.,

_____

[11] In its response to the appellant's motion to compel, the agency cited *Robinson v. Department of Homeland Security*, 498 F.3d 1361, 1365 (Fed. Cir. 2007), for the proposition that an adverse action is warranted if an employee fails to maintain the security clearance "required by the job description." 0001 IAF, Tab 14 at 6. We agree with the appellant that *Robinson* is distinguishable because the appellant in that case did not challenge the authenticity of the clearance designation. 0001 IAF, Tab 16 at 9-10.

then FLETC Chief of Staff; C.P., then FLETC Director; and P.A., a Human Resources Specialist. 0001 IAF, Tab 20 at 12. C.P. stated in her declaration that the position description for the PCO Chief position "does not include the need for a clearance and was never adjudicated by the department to need one." 0001 IAF, Tab 4 at 37. She went on to state that K.L. "required it locally because he believed that the job may require access to classified information." *Id*. However, in his own declaration, K.L. stated unequivocally that the appellant's position did not require a security clearance; that he did not order or request that the position include a security clearance as a condition of employment; and that he never requested that security or human resources personnel place a clearance requirement in the position description. 0001 PFR File, Tab 1 at 19-20. In his declaration, P.A. explained that he attached a sticker indicating a "Top Secret Clearance" to the OF-8 he received from management, presumably after it had been signed by C.P. and K.L. 0001 IAF, Tab 20 at 9. P.A. described the sticker as a "correction," but he did not explain the basis for his belief that the position required a clearance, nor did he indicate who, if anyone, authorized him to make the alteration.[12] *Id*. In addition, the record contains a declaration by former FLETC Chief of Special Security/Assistant Chief Security Officer J.D., who stated that a position description for a position requiring a clearance must contain a written justification clearly explaining how the incumbent's duties are related to classified information, and that this requirement was not met in the appellant's

---

[12] In addition to placing a sticker on Box 24, P.A. also altered Box 12 of the OF-8, which purportedly indicates the position's sensitivity level. Block 12 was originally marked as "Non-Critical Sensitive" and still bears traces of ink in that box. 0001 IAF, Tab 20 at 12. In his declaration, P.A. explains that he whited out the original mark and changed it to "Critical Sensitive" to accord with a Top Secret clearance. *Id*. at 9. As discussed above, however, it is unclear whether the Top Secret clearance designation was correctly added to the OF-8 in the first instance. Moreover, the narrative portion of the position description does not specify a sensitivity level. *Id*. at 14-23. Under these circumstances, it would be circular reasoning to treat the "Critical Sensitive" checkmark as evidence of a security clearance requirement.

case. 0001 IAF, Tab 28 at 32-33. Under these circumstances, we cannot rule out the possibility of ministerial error in the execution of the OF-8.

Nor does the record apart from the OF-8 contain sufficient evidence to support a finding that the PCO Chief position requires a clearance. As noted above, the narrative portion of the position description contains no reference to classified information or a clearance requirement. 0001 IAF, Tab 20 at 14-23. The administrative judge found that, notwithstanding that conspicuous omission, "certain portions of the narrative could . . . be read to suggest that a situation could arise where the appellant would need to access classified information." 0001 ID at 7-8. However, that finding is inconsistent with the statements made by several agency officials, under penalty of perjury, that the appellant's duties did not in fact require a clearance or access to classified information. *See* 0001 PFR, Tab 3 at 19, Tab 28 at 22, Tab 4 at 41, 44. Moreover, while it appears the appellant may have supervised employees with clearances, *see* 0001 IAF, Tab 28 at 42-51, this alone does not compel a conclusion that her own position required a clearance, especially in light of the written testimony noted above.

In sum, the current record contains contradictions, and we cannot presently determine whether the appellant's position in fact required a clearance. Accordingly, should the administrative judge determine that the Board has jurisdiction in *O'Quinn I*, he should allow for further development of the record on this issue. In light of the administrative judge's erroneous decision to deny discovery on that issue, the appellant may renew her request for a hearing. The administrative judge should then make a new finding on the merits of the indefinite suspension action. We stress that the burden of proof lies with the agency to demonstrate by preponderant evidence that the appellant's position required a clearance. *Gamboa*, 120 M.S.P.R. 594, ¶ 11.

The administrative judge should also make a new finding as to whether, under the particular circumstances of this case, the Board has authority to consider the appellant's affirmative defenses of discrimination, EEO retaliation,

and whistleblowing reprisal. If the administrative judge determines that it is possible to adjudicate some or all of these defenses without reviewing the merits of the agency's decision to suspend the appellant's security clearance—which may or may not have been a requirement of her position in the first instance—he should allow for further development of the record on those defenses and adjudicate them accordingly. *See Helms v. Department of the Army*, 114 M.S.P.R. 447, ¶ 9 n.* (2010) (noting the possibility of a viable affirmative defense that would not require the Board to review the substance of the underlying security clearance determination).

AT-1221-22-0478-W-1 (*O'Quinn II*)

If the administrative judge determines that (1) the appellant is covered by the election of remedies provisions of 5 U.S.C. § 7121(g), and (2) either the appellant made a binding election to contest her indefinite suspension before the Board or the appellant did not previously make a binding election of remedies but indicates that she now wishes to continue the proceedings in *O'Quinn I*, the administrative judge should find that the Board lacks IRA jurisdiction with respect to the indefinite suspension. Otherwise, the administrative judge should make a new jurisdictional finding regarding that action. In doing so, the administrative judge should consider whether, under the particular circumstances of this case, it is possible to adjudicate the appellant's claim of retaliation in connection with her indefinite suspension without reviewing the merits of the agency's decision to suspend her security clearance.[13]

Regardless of whether the Board has IRA jurisdiction with regard to the appellant's indefinite suspension, the administrative judge should also determine on remand whether the Board has jurisdiction with regard to any of the other whistleblowing reprisal claims the appellant exhausted before OSC. *See Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 11 (explaining

---

[13] A relevant consideration may be whether the appellant's position required a security clearance in the first instance.

that an appellant may demonstrate exhaustion through the initial complaint, subsequent correspondence with OSC, or other sufficiently reliable evidence, such as an affidavit or declaration attesting that the appellant raised with OSC the substance of the facts in the Board appeal). Should the administrative judge conclude that the Board has jurisdiction over any of the appellant's whistleblowing reprisal claims, he should provide the appellant her requested hearing and adjudicate those claims on the merits.

## ORDER

For the reasons discussed above, we remand this case to the Atlanta Regional Office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:

*Gina K. Grippando*

_____

Gina K. Grippando
Clerk of the Board

Washington, D.C.